STATE of Missouri, Plaintiff–
Respondent,

v.

Ralph C. PIERCE, Sr., Defendant–
Appellant.

No. 68792.

Missouri Court of Appeals,
Eastern District,
Division Four.

Sept. 17, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 29, 1996.

Daniel & Fleming, L.C., Eugene O. Howard, Lawrence J. Fleming, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

HOFF, Judge.

Ralph C. Pierce, Sr. (defendant) appeals the judgment entered upon his conviction of involuntary manslaughter, § 565.024 RSMo 1986, and six year sentence imposed following a jury trial. We affirm.

On July 9, 1994, an altercation arose involving defendant, his next door neighbor (neighbor), and his neighbor's friend who formerly lived with neighbor next door to defendant for three years (victim). It is undisputed that defendant struck victim with his pickup truck and victim died as a result of the injuries he sustained. Defendant was

charged with and tried for voluntary manslaughter, § 565.023.1(1) RSMo 1986.

In his first point on appeal, defendant asserts the trial court erred in denying his motion for judgment of acquittal because the evidence presented was insufficient as a matter of law to sustain a conviction of involuntary manslaughter. Defendant contends there was no evidence of "recklessness," a required element of involuntary manslaughter under § 565.024.1 RSMo 1986.

When reviewing the sufficiency of the evidence, this Court accepts as true all evidence and inferences favorable to the state and disregards all evidence and inferences to the contrary. *State v. Dulany,* 781 S.W.2d 52, 55 (Mo. banc 1989). We do not weigh the evidence or determine the reliability or credibility of witnesses. *State v. Jennings,* 887 S.W.2d 752, 753 (Mo.App.1994). We review the evidence to determine whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *Dulany,* 781 S.W.2d at 55.

Section 565.024 RSMo 1986 provides, in relevant part:

1. A person commits the crime of involuntary manslaughter if he:

(1) Recklessly causes the death of another person; ...

A person "acts recklessly" or "is reckless" when the person acts in such a manner that there is a substantial and unjustifiable risk that the person will cause the death of another, and such person's conscious disregard of that risk constitutes a gross deviation from what a reasonable person would do under the circumstances. *State v. Skinner,* 734 S.W.2d 877, 882 (Mo.App.1987); § 562.016.4 RSMo 1986.

At trial, defendant testified that he became very angry after he had been awakened from a nap by prank phone calls. Defendant testified that after being awakened, he looked out the front door and saw neighbor and victim sitting on neighbor's driveway looking towards defendant's house. Defendant testified that neighbor, who was in a wheelchair, had a cordless telephone with him. Defendant also testified that neighbor

always carried a cordless telephone with him when he was outside. Defendant speculated the phone calls were made by neighbor. Defendant further testified he saw victim's vehicle parked in front of his property, so he approached the two men to request that the vehicle be moved. After a heated confrontation, defendant admitted he went back to his house, got into his pickup truck, drove down his driveway, and began to push victim's vehicle from in front of his house with his truck. Defendant admitted he pushed victim's vehicle several times, backing up in between attempts.

Viewed in the light most favorable to the verdict, the evidence indicates that victim walked to his vehicle to inspect the damage inflicted by defendant. As victim bent down to look at the damage on the front grill of his vehicle, defendant struck him with his truck forcing victim onto the hood of the truck. As defendant backed up his truck, victim fell off the hood onto the street. Defendant then swung the truck around the corner of victim's vehicle and ran over victim. Victim died of the injuries he sustained.

Defendant maintains the judgment entered on his conviction cannot be upheld because the state presented no evidence of defendant's recklessness. He asserts the only evidence offered by the state concerned voluntary manslaughter.

We note that defendant did not object to the giving of an involuntary manslaughter instruction. We further find there was sufficient evidence to establish that defendant committed the crime of involuntary manslaughter by recklessly causing the death of victim. The jury could have reasonably determined that when defendant drove his truck toward the victim's vehicle while victim was leaning down inspecting the damage, defendant consciously disregarded a substantial and unjustifiable risk of hitting victim. The jury also could have reasonably determined that when defendant continued to accelerate after victim had fallen off the hood of his truck, defendant consciously disregarded a substantial and unjustifiable risk of running over victim.

Additionally, no trial or judgment shall be in any manner affected because the evidence shows or tends to show that the defendant is guilty of a higher degree of the offense than that of which he is convicted. § 545.030.1(17) RSMo 1986.

Therefore, the trial court did not err in denying defendant's motion for judgment of acquittal because the evidence was sufficient to sustain a conviction of involuntary manslaughter. Point denied.

In his second point on appeal, defendant contends the trial court erred in permitting the state to elicit testimony from investigating officers that defendant had asserted his right to remain silent and requested a lawyer at the scene of the incident. Defendant further contends the trial court erred in failing to declare a mistrial because such testimony was a direct violation of his Missouri and United States Constitutional rights to have no comment made on his post arrest silence.

■ Generally, post arrest silence may not be admitted for use against the defendant. *State v. Wilson,* 826 S.W.2d 79, 82 (Mo.App.1992). However, post arrest silence is admissible if the defendant waives his right to remain silent by giving a voluntary statement. *Id.* Although an accused's waiver of his right to remain silent is not irrevocable, it is effective until it is withdrawn and if an accused elects to reassert his right to remain silent, he must manifest that decision in some discernable way. *State v. Pulis,* 822 S.W.2d 541, 546 (Mo.App.1992).

■ At trial, the state may not use the fact that the defendant remained silent or claimed his right to remain silent "in the face of accusation." *State v. Green,* 798 S.W.2d 498, 502 (Mo.App.1990). Additionally, the state may not use post-arrest silence as (1) affirmative proof or (2) to impeach the defendant's testimony. *Id.*

■ Here, the uncontradicted testimony was that after Officer Miller advised defendant of his *Miranda*[1] rights at the scene, defendant indicated he understood his rights, stated he did not want to talk to Officer Miller, and requested a lawyer. However,

defendant did not remain silent. As defendant was being placed in the police car, defendant voluntarily made statements directing the officers to also arrest victim. Additionally, as Officer Miller was going over a written explanation of defendant's *Miranda* rights at the police station, defendant made several more statements regarding the crime.

The evidence indicates the state did not use defendant's statements regarding his intention to remain silent as evidence that defendant remained silent or claimed his right to remain silent "in the face of accusation." Additionally, the state did not use these statements as evidence of guilt, affirmative proof of any fact, or to impeach any of defendant's testimony. The state merely used defendant's statements to explain that defendant voluntarily gave statements after indicating he had invoked his right to remain silent, thereby waiving his right to remain silent. It was necessary for the state to give the chronological order of the events that took place leading up to defendant's post-arrest statements to show that defendant voluntarily gave statements after waiving his right to remain silent and was not answering questions posed by the police.

Therefore, the trial court did not err in permitting testimony regarding defendant's invocation of his right to remain silent before defendant made voluntary statements. Additionally, the trial court did not err in failing to declare a mistrial. Point denied.

In his third point, defendant argues the trial court erred in denying his motion to suppress a video tape of his booking at the police station. Defendant further argues the trial court erred by allowing the state to play the tape to the jury as rebuttal evidence to demonstrate that defendant had no remorse upon hearing of victim's death. Defendant asserts the tape was improper because it was made after he had asserted his right to remain silent and had requested an attorney. Therefore, defendant argues it violated his Missouri and United States Constitutional rights because it allowed the state to comment on his post arrest silence.

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

■ Contrary to defendant's assertion, the state did not offer the video tape to rebut defendant's showing of remorse while testifying. In fact, the state did not even play the portion of video tape showing the defendant remaining silent after being told of victim's death. The state offered very specific portions of the video tape to rebut different statements made by defendant while testifying. Therefore, our review of the video tape is limited to whether it was proper rebuttal evidence.

The state's reasons for offering portions of the video tape were as follows:

[STATE:] State intends on using the videotape for three different incidents that the Defendant has either denied happened or claims that he doesn't remember. And they include a statement that was made to the effect of they were all trying to get something on me, they were down there trying to aggravate me with their little camera, that statement as well as a statement made by Ralph Reich when he informs the Defendant that the man has in fact died.

Ralph Reich does not inform the Defendant of the man's name. That's clear on the video.

And, also a statement later concerning the truck being parked still in front of his house, that he doesn't remember or denies, and I would like to play those to rebut the testimony of the Defendant.

. . .

[T]he Defendant's story with regard to asking someone to move his car is a lie and I can prove that if you want to play the entire video.

■ The scope and admission of evidence on rebuttal is a matter within the sound discretion of the trial court. *State v. Arnold*, 859 S.W.2d 280, 282 (Mo.App.1993). Proper rebuttal evidence explains, counteracts, disproves or refutes evidence offered by the defendant. *Id.* We will not reverse admission of rebuttal evidence absent a showing of abuse of discretion. *Id.*

On direct examination, defendant testified as follows:

[DEFENDANT:] And Frank Akers at that time I didn't know who he was.

. . .

But like I said, I didn't know who that man was until—

[DEFENSE COUNSEL:] Even though he had lived next to you some five years before that you didn't recognize him?

[DEFENDANT:] No, sir.

. . .

[DEFENSE COUNSEL:] When did you find out that Mr. Aker had died?

. . .

[DEFENDANT:] After they booked me and fingerprinted me, and then—well, the wife was there, too, and they come in and said that the guy died. He didn't make it. And his name was Frank Akers. That's where it first dawned on me who he was.

On cross-examination, defendant testified as follows:

[STATE:] But the police officer you say that informed you that the man had died also told you that the man's name was Frank Aker?

[DEFENDANT:] (Nodding)

[STATE:] Is that correct?

[DEFENDANT:] Yes, Yes, sir.

[STATE:] And you say that's how you finally learned his name because you didn't recognize him?

[DEFENDANT:] That's right. When I heard that information, when they give me that information, they said it was Frank Akers. And I didn't hardly believe him. I didn't realize that it was Frank Akers.

. . .

[STATE:] When the police officer told you that the man had died did he tell you the man's name, yes or no?

[DEFENDANT:] Yes.

. . .

[STATE:] Didn't you tell the police, sir, that they were down there aggravating you with their little camera?

[DEFENDANT:] No. No, sir, I didn't say that.

[STATE:] Do you deny making that statement to the police officers?

[DEFENDANT:] I don't believe I said that.

[STATE:] Do you deny making a statement to Officer Reich about moving the man's truck from in front of your house after you found out that you had killed him with your truck?

[DEFENDANT:] I don't remember that, no.

. . .

[STATE:] Well, they were trying to get something on you, that's the way you put it, is that correct? Did you think they were trying to get something on you?

(No response)

[STATE:] Yes or on [sic]?

[DEFENDANT:] At that time maybe no.

Although the video tape was provided to this Court as an exhibit, a transcript of the video tape was not. Our review of the portions of the video tape played to the jury by the state gleans the following statements were made while defendant was at the police station:

POLICE OFFICER (to defendant): You know me, Tiger, I don't pull no punches with you. I'm here to tell you something. I want you to listen, OK? I bring Wayne in here with us. The man died. He did die. We just got it confirmed. Wayne heard me on the phone with the officer. You're going to be booked for second degree murder. . . . But I thought I'd let you know the man did die.

The video tape was then stopped and fast forwarded to the following section:

DEFENDANT: There's been trouble down there for a long time.

. . .

DEFENDANT: That car is still there.

POLICE OFFICER: Your truck?

DEFENDANT: No, the other car is still there—the one they parked in front of my house. I want it moved.

POLICE OFFICER: We can't move it, Ralph.

The video tape disproved and refuted defendant's testimony about not knowing the identity of the victim. The portion of the video tape showing the police officer telling defendant of victim's death was shown to rebut defendant's testimony that the police officer told him victim's name at this time. Defendant's silence after being told of victim's death was not used by the state. The video tape was immediately stopped and fast forwarded to the second section shown. The second section of the video tape disproved and refuted defendant's testimony that he did not ask the officers to have victim's vehicle moved from in front of his house.

Therefore, the trial court did not err or abuse its discretion in allowing portions of the video tape to be played to the jury because it did not improperly comment on defendant's post-arrest silence and it properly rebutted defendant's testimony. Point denied.

In his fourth point, defendant contends the trial court erred in allowing the state to introduce police records indicating numerous complaints filed by neighbor, victim, defendant, and defendant's wife to show a history of tension and confrontation. Defendant argues these police records were totally irrelevant to the charge at issue, tended to imply other crimes or misconduct not charged, pertained to matters which had not resulted in a conviction of any person, constituted multiple hearsay, and tended to prejudice defendant and confuse the jury.

First, we note that defendant's point is not entirely reviewable by this Court. Although defendant made a continuing relevancy objection to the use of all the police complaint sheets and objected to the use of one specific police complaint sheet asserting it was hearsay and evidence of other crimes, defendant's other objections to this evidence raised in this point on appeal were not presented to the trial court. Therefore, these objections are not preserved for appeal.

An appellant cannot change or broaden an objection beyond that made before the trial court. *Vaughn v. Ems,* 744 S.W.2d 542, 549 (Mo.App.1988). When an objection is made for the first time on appeal and was not presented to or ruled on by the trial court, this Court will not review it. *Id.* When the proper objection is not made at trial, nothing is preserved for review because

the trial court cannot be considered to have erred. *Id.*

Therefore, we will review the admission of all of the police complaint sheets as to relevancy, but limit our analysis of the hearsay objection and evidence of other crimes objection to the specific police complaint sheet objected to on these grounds at trial.

 Second, we note that the issue of neighborhood tension and problems between the defendant and neighbor was first injected into the case by defendant in his opening statement. When the defendant has injected an issue into the case, the state may be allowed to admit otherwise inadmissible evidence in order to explain or counteract a negative inference raised by this issue. *State v. Lingar,* 726 S.W.2d 728, 734–735 (Mo. banc 1987).

In his opening statement, defense counsel implied that neighbor was a bad neighbor. The state then used the police complaint sheets to show that defendant had registered numerous complaints with the police complaining about everyday neighborhood activity. Therefore, the police complaint sheets were properly used to explain and counteract a negative inference raised by defendant.

Additionally, the specific police complaint sheet objected to as hearsay was not. Nor did it allege evidence of other crimes. The police complaint sheet was not used to prove the truth of the matter asserted, it was used to show a pattern of neighborhood tension between defendant, neighbor, and victim.

Finally, this evidence was relevant. Trial courts have discretion in determining relevancy. *State v. Shurn,* 866 S.W.2d 447, 457 (Mo. banc 1993). We will affirm a determination of relevancy unless the trial court abused its discretion. *Id.* Generally, parties have wide latitude in developing evidence of motive. *State v. Hamilton,* 817 S.W.2d 8, 11 (Mo.App.1991). Furthermore, the bias of a witness is always relevant. *State v. Bounds,* 857 S.W.2d 474, 476 (Mo.App.1993).

The police complaint sheets were used to establish defendant's possible motive for the crime. The police complaint sheets showed a history of neighborhood tension and were relevant in showing defendant's possible motive or bias toward victim. Accordingly, the trial court did not abuse its discretion in overruling defendant's objection to the police complaint sheets on the grounds of relevancy. Point denied.

Judgment affirmed.

PUDLOWSKI, P.J., and SIMON, J., concur.