**STATE of Missouri, Respondent,**

v.

**Henry PETTY, Appellant.**

No. 71526.

Missouri Court of Appeals,
Eastern District,
Division Three.

March 3, 1998.

Application for Transfer Denied June 16, 1998.

Arthur S. Margulis, Linda Hogan, Margulis & Grant, P.C., St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jill C. LaHue, Asst. Atty. Gen., Jefferson City, for respondent.

KAROHL, Judge.

Defendant, Henry Petty, appeals from judgment after a jury verdict of first degree murder, armed criminal action and unlawful use of a weapon. The charges are related to the shooting death of his nephew. Defendant requests reversal of his convictions or in

the alternative a new trial because the trial court erred when: (1) it submitted the charges after the state failed to introduce evidence sufficient to support a finding of deliberation for the first degree murder charge which was based on accessory liability and, the evidence at best, supported equally valid inferences of deliberation; (2) it allowed the state to misstate the law in closing argument by implying the jury could convict upon a lesser mens rea than that required; (3) it admitted: (a) hearsay testimony; (b) improper rebuttal; (c) evidence not revealed in discovery; and, (d) evidence of uncharged crimes; (4) it admitted testimony of the witnesses' states of mind that they were afraid; (5) it allowed the state to implicate Defendant as a robber; and, (6) it admitted as exhibits a roll of photos, freeze-frame photos and color still photos made from a videotape of the shooting which distorted the amount of time passing. We affirm the convictions.

The facts are as follows. On the morning of May 24, 1995, Defendant was working at a car wash, Elite Detail. He received a page from Anthony Payne at the Lindell Mini–Mart (the MiniMart). He drove his girlfriend's brown car to the Mini–Mart and met with Payne's mother, Linda Payne. The Payne family owned the Mini–Mart.

Linda Payne told Defendant that she and her daughter were robbed at gun point in her home the previous March. She learned from her customers that Defendant's nephew, Nathaniel Massey, (Massey) committed the robbery. She described one of the items stolen as a ring. She told Defendant that she was working when Massey's mother patronized the Mini–Mart wearing her stolen ring. Massey's mother explained that her son gave her the ring for Mother's Day.

Linda Payne asked Defendant to retrieve her jewelry. If he did, she promised Defendant she would not press criminal charges against Massey. Defendant and Payne drove to the house of Defendant's mother. Defendant spoke with his mother. He told her he was looking for Massey, that Massey robbed some people, and they would not press charges if he could get Massey to return the items.

Defendant and Anthony Payne (Payne) left his mother's house in search of Massey. They found him standing by the street near a car. Many other people were also outside standing by the street. One witness testified that she and her friends were outside playing with a video camera before the shooting.

Witnesses described the shooting. Defendant and Payne drove up in a brown car. Defendant was driving. As Defendant and Payne drove up the street towards Massey, Defendant shouted insults out the window at him. He parked the car across the street from Massey. Massey walked over to the car where Defendant sat in the driver's seat. They talked. Then Massey walked back across the street.

Defendant made a U-turn and pulled the car over to the other side of the street where Massey was standing. Massey leaned into the passenger side window and spoke with Payne. They argued. Defendant opened the driver side door and argued with Massey over the roof of the car.

Defendant got back in the car. He drove forward. Massey yelled, calling Defendant and Payne, "b." Defendant pulled the car over to the side of the street. Defendant got out of the car. He adjusted a gun covered by his shirt, placed in the back of his waistband. He walked over to Massey. Payne remained in the car. Defendant said, "[g]et over here." Massey refused.

Massey opened the driver side door of his own car and was about to get in the car. Defendant walked over to Massey. They continued the argument while Massey stood in his open car door. Defendant accused Massey of the robbery. During the argument, a police car drove by and turned the corner.

Defendant gestured and paced as he argued with Massey. He turned and looked in the direction of the brown car. Payne had gotten out of the car and was walking towards Defendant. Defendant turned back towards Massey and yelled at Massey, "[y]ou're going to end up dead. I'm trying to save your punk a—life."

Payne walked up from behind Defendant on his left. Payne lifted the back of Defen-

dant's shirt and pulled the gun out of Defendant's waistband. Defendant did not react to Payne with words or actions, but continued to argue with Massey. Standing behind Defendant, Payne checked the gun and released the safety. Payne stepped around Defendant's right side and pointed the gun at Massey. Defendant glanced at Payne. Payne began shooting Massey. Defendant did not speak or move. Payne continued to shoot Massey as he lay on the ground. Massey sustained eleven to thirteen gun shot wounds and died at the scene.

Both Defendant and Payne fled the scene in the brown car. Defendant drove. Within a minute after the shooting, police officers arrived on the scene. They took charge of the video camera and tape. That evening, Defendant went to the police station and gave a taped statement.

Fifteen Black Talon shell casings were recovered at the scene. Officers searched Defendant's residence and found a box of Black Talon bullets with eleven remaining on a closet shelf in the basement. The gun was never recovered. A firearms examiner for the St. Louis County Police Department crime lab testified the bullets found in Massey were Black Talons, hollow point bullets designed to expand on impact.

A week after the shooting, Officer Sanchez found the brown car parked in a wash bay at Elite Detail. While she waited for license plate information, the plate was being removed. Other police officers spoke with the car wash owner. The car wash owner admitted he removed the plate and gave it to the officers. The car appeared to have been cleaned inside and out.

Dorothy Petty, sister of Defendant, testified the relationship between Defendant and Massey in the few months prior to the murder was "rough. They wasn't getting along. Him and [Massey] was fighting and feuding the whole time." The court denied Defendant's motion in limine and permitted her to testify that sometime between the months of October and December, 1994, she witnessed an argument between Defendant and Massey over drugs belonging to Payne. During the argument, Defendant threatened to kill Massey. After the argument, Massey looked "worried to death." She also described Massey's feelings toward Defendant prior to the argument as, "[h]e thought [Defendant] was God."

Defendant testified. He admitted previous convictions for possession of cocaine, heroin, and marijuana, carrying a concealed weapon and unlawful use of a weapon. He said he had a good relationship with Massey prior to the shooting. He denied any role in the Mini–Mart robbery. He testified the gun used in the shooting was Payne's. He took it from Payne to keep anything from happening. He did not know that Payne was going to shoot Massey until Payne took the gun and pointed it at Massey. He was so shocked, he could not react.

The state called an unendorsed rebuttal witness, Tiffany Jones. She testified she was Massey's girlfriend for two and a half years. She described the relationship between Defendant and Massey as, "[a]t first it was a normal, uncle/nephew relationship. Then it got to be hostile. They would get into fights and arguments, things like that." She also testified, over objection, that she picked Massey up after an argument with Defendant over drugs within the year before the shooting. Massey told her he was afraid his uncle was going to kill him.

The court overruled the motions for judgment of acquittal. The jury returned a guilty verdict on all counts. The court again overruled Defendant's motion for judgment of acquittal notwithstanding the verdict or in the alternative motion for new trial. The court sentenced Defendant to life without probation and parole for murder in the first degree, three years for armed criminal action and three years for unlawful use of a weapon, all to run consecutively. Defendant appeals.

## SUFFICIENCY OF EVIDENCE

In his first point, Defendant argues the trial court erred when it submitted the first degree murder and the related armed criminal action charges to the jury because the state failed to introduce evidence supporting the element of deliberation or, at best, the evidence at trial supported equally valid opposing inferences on that element. He ar-

gues there is no evidence to support an inference that prior to the shooting, he was aware of Payne's plan to shoot Massey or that prior to the shooting he did anything to aid or encourage Payne in committing the crime. He contends the evidence introduced failed to establish: (1) a link between the argument he had seven months earlier and the shooting; or, (2) that he arrived at the scene intending to help kill Massey. He claims the state admitted during closing argument that when he first arrived at the scene, he might not have meant for Massey to die. Finally, he argues the testimony evidence and videotape clearly weighed against a finding of deliberation.

In reviewing the issue of sufficiency of the evidence to support a criminal conviction, we accept as true all evidence favorable to the state, including all favorable inferences drawn from evidence and disregard all evidence and inferences to the contrary. *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc 1993) *cert. denied*, 510 U.S. 997, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993). The issue is whether there is sufficient evidence on all elements of a charge from which a reasonable juror might have found a defendant guilty beyond a reasonable doubt. *Id.*

There must be evidence from which a reasonable juror could conclude beyond a reasonable doubt that Defendant aided Payne in killing Massey, with a conscious purpose to commit the acts so that Massey would be killed, and he committed the acts after coolly deliberating on the death for some amount of time, no matter how short. *State v. Clemons*, 946 S.W.2d 206, 216 (Mo. banc 1997) *cert. denied*, —— U.S. ——, 118 S.Ct. 416, 139 L.Ed.2d 318 (1997). The act of homicide may be imputed to an accessory, but not the element of deliberation. *State v. O'Brien*, 857 S.W.2d 212, 218 (Mo. banc 1993). Any evidence fairly showing affirmative participation by a defendant in aiding another to commit a crime is sufficient to support a conviction. *State v. Jeffries*, 858 S.W.2d 821, 824 (Mo.App. E.D.1993).

There are three highly relevant circumstances which will support an inference of accomplice deliberation in first degree murder cases: (1) statements or conduct by a defendant or a co-defendant in the presence of defendant prior to the murder indicating a purpose to kill a human; (2) evidence the murder was committed by means of a deadly weapon and the accomplice was aware the deadly weapon was to be used in the commission of a crime; and, (3) evidence that the defendant either participated in the homicide or continued in the criminal enterprise even after it was apparent that a victim was to be killed. *State v. Gray*, 887 S.W.2d 369, 376–77 (Mo. banc 1994), *cert. denied*, 514 U.S. 1042, 115 S.Ct. 1414, 131 L.Ed.2d 299 (1995).

We find deliberation may be inferred from the evidence. The second and third highly relevant circumstances are present in this case. Payne's conduct in the presence of Defendant indicated a purpose to kill Massey and Defendant's conduct assisted Payne. In addition, Defendant's threats and assaultive conduct toward Massey imply deliberation.

Defendant drove Payne to Massey. They had a handgun loaded with Black Talon bullets designed to maximize injury. The bullets were the same kind found at Defendant's residence. Defendant concealed the gun under his shirt, but allowed Payne to know he had the gun so Payne could reach it under his shirt.

Defendant actively instigated an argument with Massey. He insulted Massey and warned him he was going to get killed. He previously threatened to kill Massey. The evidence supported a finding the argument was over jewelry which Defendant stole and tried to blame on Massey or drugs Massey owed Payne. Defendant knew Payne was approaching him from behind. He allowed Payne to lift up his shirt and take the gun from his waistband. He thereafter failed to react and continued to argue with Massey. There is an available inference Defendant's continuation of the argument was to distract Massey.

After the shooting, Defendant failed to seek aid for Massey. He drove Payne away from the scene. Finally, the videotape is sufficient to support a finding of deliberation. Thus, there is sufficient direct and circumstantial evidence from which a reasonable juror might have found the element of delib-

eration beyond a reasonable doubt which would support the trial court's submission of the charge of first degree murder and armed criminal action to the jury.

Defendant argues in the alternative, that the equally valid inference doctrine is still authoritative and applies to his trial. He contends the inference that he knew of Payne's intentions just before the shooting is equal to the inference that he was surprised by Payne's actions and he could not have stopped Payne from taking the gun and shooting Massey because he was in shock.

■ The equally valid inference doctrine formerly applied when the issue was sufficiency of the evidence to support a guilty verdict if the evidence would support two equally valid inferences, one of guilt, one of innocence. *State v. Hodge*, 927 S.W.2d 500, 502 (Mo.App. E.D.1996). Regarding circumstantial evidence, our supreme court abolished the equally valid inference doctrine with some exceptions. *Grim*, 854 S.W.2d at 414. The doctrine still applies when: (1) the evidence would support a finding that either defendant or another, acting independently, committed the crime; or, (2) the state's evidence supports a finding defendant committed the crime and defendant has a legal defense to the charge; or, (3) there is no credible evidence of some element of the charged crime. *Id.* The equally valid inference doctrine no longer applies to the facts in this case. There was a factual dispute of opposing inferences for the jury to resolve based upon direct evidence consisting of the testimony of eye witnesses, Defendant's statement to the police, Defendant's own testimony and the videotape. Defendant's issue also does not fall under any exception to the circumstantial evidence rule regarding equal inferences. The state's evidence need not exclude every reasonable theory of Defendant's innocence. *Hodge*, 927 S.W.2d at 502. It is for the jury to choose among the reasonable constructions of the evidence, providing there is evidence sufficient to support a finding of all the elements of the charged crime. *Id.* There was sufficient evidence to deny Defendant's motion for acquittal and submit the charges to the jury.

## MISSTATEMENT OF THE LAW DURING CLOSING ARGUMENT

■ In his second point, Defendant requests reversal of his convictions because the court overruled his objections to the prosecutor's misstatements of law in closing argument on three occasions. The prejudicial effect of final argument is a matter within the discretion of the trial court and the trial court's judgment on that issue will not be disturbed unless there is an abuse of discretion. *Hoover's Dairy, Inc. v. Mid–America Dairymen, Inc./Special Products, Inc.*, 700 S.W.2d 426, 434 (Mo. banc 1985). Where there is timely and proper objection to closing argument, the trial court has broad discretion in ruling on such objections and wide latitude will be accorded counsel in their summations. *State v. Mayo*, 927 S.W.2d 535, 537 (Mo.App. E.D.1996). A conviction will be reversed for improper argument only if it is established that the complained of comments had a decisive effect on the jury's determination or where the argument is plainly unwarranted. *Id.*

■ Although Defendant made timely objections to the arguments, his complaints about the first two challenged arguments were not included in his motion for new trial, and therefore, were not preserved for appellate review. Rule 29.11(d). *State v. Washington*, 846 S.W.2d 794, 795 (Mo.App. E.D. 1993). These arguments may be considered only under the plain error standard. Rule 29.12(b); Rule 30.20. Defendant bears the burden of proving that the alleged error is of such a magnitude that it constitutes plain error. *State v. Ellsworth*, 908 S.W.2d 375, 378 (Mo.App. E.D.1995). Plain error review mandates reversal only if the error results in manifest injustice. *Id.* Plain error review also requires that the argument have a decisive effect on the jury's determination. *Id.* The first plain error argument is the court allowed the prosecutor to argue there was sufficient evidence for first degree murder under a theory of accomplice liability even if Defendant did not know Payne was going to kill Massey until Payne reached for the gun. The first challenged argument provides:

Okay, the State never has to prove he ever pulled the trigger. When he first got there he meant for [Massey] to die, I don't have to prove that. Maybe he didn't. Maybe he meant to try to save the kid, but you know as well as I do when you look at that videotape, when you see the photographs and when you see that guy on the stand that he knew Anthony Payne was the man and he couldn't resolve it, so Payne was going to put him down he stood there knowing when he touched him he was going for the gun. You don't have to be a brain surgeon. If you figure out you take a gun away from somebody you know is going to kill your nephew, if someone comes up and touches your gun, it's him specially [sic] when you look back and see him coming and that is enough under the law for Murder in the First Degree against [Defendant]. Don't let [defense counsel] trick you into trying to believe that's not enough. It is enough.

The second plain error argument is the court allowed the prosecutor to argue that Defendant's driving Payne away from the scene of the crime satisfied the element of deliberation. The second challenged argument provides:

> Those are the actions and inactions of a person who's [sic] intent and knowledge is, "I knew it was going to have to happen," and, under the law, ladies and gentlemen, even if he doesn't pull the trigger, you know from jury selection and the instructions the Judge read that he's just as guilty of that Murder in the First Degree as if he pulled the trigger, as long as he aided acted together with or encouraged Anthony Payne in committing that murder, and bringing that gun to that scene is enough and taking him away from the scene helping him escape is enough.

In the third claim of trial court error, Defendant contends the court allowed the prosecutor to argue, "I do not have to prove the defendant caused [Massey's] death."

Defendant argues these three statements were so prejudicial and confusing to the jury regarding the law, it created an impermissible risk that Defendant was convicted upon the lesser mens rea of acting with another who separately deliberated, instead of the mens rea required in a first degree murder conviction that Defendant deliberated. He contends the prosecutor was permitted to tell the jury it could convict Defendant because he failed to wrestle the gun away from Payne. He asserts his noninterference in the criminal act is not the active participation required for accomplice liability.

 Misstatements of the law are impermissible during closing arguments and a duty rests upon the court to restrain such arguments. *State v. Graham*, 916 S.W.2d 434, 436 (Mo.App. E.D.1996). The parties are permitted wide latitude in their comments, but they cannot argue beyond the evidence, beyond the issues drawn by the instructions, or urge prejudicial matters. *Id.* We interpret the comments with the entire record rather than in isolation. *Id.*

 All three statements made by the prosecutor in closing argument are not legally incorrect. The prosecutor's second and third statements are acceptable as rebuttal to Defendant's arguments on the law. The second argument was in retaliation to Defendant's argument that the state had to prove beyond a reasonable doubt, not just that Defendant was present and merely acting, but that he was acting with a specific intent and with cool reflection. The third argument was in retaliation to Defendant's argument that the job of the jury was "did this man commit a murder. Not that he just let the murder happen or that the situation got beyond his control and out of his control that he couldn't do anything about [it]." A prosecutor may retaliate to an issue raised by a defendant's closing argument even if the prosecutor's argument would otherwise be improper. *State v. Santonelli*, 914 S.W.2d 13, 15 (Mo.App. E.D.1995). Consequently, we find no error, plain or preserved, in allowing the prosecutor's arguments.

## ADMISSION OF DEFENDANT'S STATEMENTS, VICTIM'S STATE OF MIND AND EVIDENCE OF OTHER CRIMES

In his third point, Defendant contends the trial court erred in admitting the testimony

of Dorothy Petty and the testimony of a rebuttal witness, Tiffany Jones. He argues this evidence was prejudicial and requires a reversal of his convictions. We review Defendant's objections to this testimony out of order. First, he complains the state committed a discovery violation when it failed to timely disclose statements allegedly made by Defendant, thus creating fundamental unfairness through surprise. The statements revolve around the argument Dorothy Petty claimed occurred between Defendant and Massey in her presence in which Defendant threatened to kill Massey. Defendant contends the state had knowledge of this evidence no less than three months before trial and withheld the information until the Thursday before trial which began the following Monday. Despite his complaint about the lack of timely disclosure, the court allowed the state to elicit the testimony of Dorothy Petty regarding the threats.

■ Rule 25.03(A)(1) and (2) requires the state upon timely request, to disclose the "names and addresses of persons it intends to call as witnesses" and their statements as well as any statements made by a defendant or co-defendant and a list of all witnesses with knowledge of such statements. The object of the discovery process is to permit a defendant a decent opportunity to prepare in advance of trial and avoid surprise. *State v. Kilgore*, 771 S.W.2d 57, 66 (Mo. banc 1989) *cert. denied*, 493 U.S. 874, 110 S.Ct. 211, 107 L.Ed.2d 164 (1989). This duty to disclose information is a continuing one. *State v. Royal*, 610 S.W.2d 946, 951 (Mo. banc 1981).

■ Prior to trial, Defendant filed a discovery motion requesting the state permit Defendant to inspect and copy or photograph "[a]ny written or recorded statements and the substance of any oral statements made by the Defendant or by a Co-Defendant, a list of all witnesses to the making, and a list of all witnesses to the acknowledgment, of such statements, and the last known addresses of such witnesses." The state responded to the Defendant's motion to produce and endorsed a number of witnesses, including Dorothy Petty. There is no dispute that the prosecutor who tried the case was assigned three months before trial. There is also no

dispute the state did not reveal its evidence of Defendant's threats to Massey until the Thursday before trial on the following Monday. The state's excuse for not revealing Defendant's statements earlier was that Dorothy Petty did not reveal the threats to the new prosecutor assigned to the case until the week before trial.

It is true that important evidence may be discovered at the last minute. *State v. Whitfield*, 837 S.W.2d 503, 508 (Mo. banc 1992) *cert. denied*, — U.S. —, 118 S.Ct. 97, 139 L.Ed.2d 52 (1997). However, the information was not newly discovered evidence. Dorothy Petty testified she told the prosecutor previously assigned to the case about the argument. She also testified that she never revealed the argument to police, or to her mother and sister, or the defense counsel during her deposition statement. Thus, Defendant could not have acquired the information except from the state. "The rules of criminal discovery are not 'mere etiquette' nor is compliance discretionary." *Whitfield*, 837 S.W.2d at 507 (citing *State v. Luton*, 795 S.W.2d 468, 477 (Mo.App.1990)). We find the state committed a discovery violation. It breached its duty to inform Defendant of its intent to introduce this evidence when it learned the evidence was available.

■ Once it is determined the state committed a discovery violation, the next part of the question is whether the breach was prejudicial in a case where Defendant testified. In order to remedy a discovery violation, Rule 25.16 allows the court to "order such party to make disclosure of material and information not previously disclosed, grant a continuance, exclude such evidence, or enter such other orders as it deems just under the circumstances." Rule 25.16 makes sanctions permissive rather than mandatory. *Whitfield*, 837 S.W.2d at 507. The trial court is in the best position to assess the prejudicial effect of the failure to disclose and to determine what remedy was necessary to alleviate any unfairness. *State v. Smothers*, 605 S.W.2d 128, 133 (Mo. banc 1980) *cert. denied*, 450 U.S. 1000, 101 S.Ct. 1708, 68 L.Ed.2d 203 (1981). The trial court must tailor the appropriate remedy to be fundamentally fair to each party. *Whitfield*, 837 S.W.2d at 508.

While any incriminating evidence is prejudicial, the notion of fundamental unfairness is to be measured by whether the nondisclosure would have affected the result of the trial. *Kilgore*, 771 S.W.2d at 66.

Here, the relief requested was exclusion of Defendant's statements made during the argument. During oral motions in limine before trial, Defendant complained of the late disclosure of Dorothy Petty's testimony and the resulting surprise. Defense counsel stated, "I'm going to have a hard time meeting that in court...." The court refused to exclude the testimony but said, "If you need some time to talk to these people, we'll give you the time. What's your pleasure?" Defense counsel replied, "I would like to question Miss Petty on when that was allegedly done, said, et cetera." That procedure appears to have resolved counsel's concern.

During a recess, the court revisited Defendant's motion in limine to prevent testimony regarding the argument over drugs and any other instance of drugs or drug dealing. Defense counsel argued:

> [I]f [the state] plans on getting into a drug conspiracy between [Defendant] and [Payne], Judge, my hands are tied at this point. We're in the middle of trial when the drug deals went down, who was there. It's all hearsay and speculation. That changes the entire course of the trial. At this point I would not be able to meet that evidence sufficiently in my defense. I would ask that the Court exclude both of those types of testimony and evidence.

The court allowed the testimony regarding threats made during the argument in question and excluded testimony about other drug dealing. The court called the jury. Defense counsel objected and said, "I haven't had a chance to talk to this woman." In reply the court said, "[y]ou'll certainly be given that opportunity." The court said, "[i]f you'll talk to her now, it will flow better," and "[c]ounsel, after you've had an opportunity to talk to her, let me know." Counsel was apparently satisfied.

The state called Dorothy Petty as its last witness in its case in chief. During examination, she testified the relationship between Defendant and Massey before the shooting was "rough" and they were "fighting and feuding." Defendant did not object until the state asked, "Did you witness an argument between [Defendant] and [Massey] back about that time?" Defendant cross-examined Dorothy Petty about the argument and impeached her testimony as inconsistent with the testimony of her mother and her own deposition testimony.

■■■ We find the admission of evidence of Defendant's threats, did not affect the result of Defendant's verdicts. First, Dorothy Petty's testimony regarding Defendant's threats did not make her a necessary key witness to prove any element of the charged crimes. The jury could have completely disregarded Defendant's threats because evidence of recent animosity between Defendant and Massey was admitted without objection when Dorothy Petty described their relationship as "rough" and they were "fighting and feuding." Second, independent of her testimony, there was sufficient evidence to support a finding of each element of the crime of first degree murder. In particular, there was direct evidence of motive and intent of Defendant through introduction and viewing of the amateur videotape. Finally, defense counsel apparently accepted the court's invitation to cure any discovery violation. Although defense counsel twice said that she would have a hard time meeting the evidence of the threats, she did not specify how admission of the statements would adversely affect her defense strategy. There was no request for a continuance allowed under Rule 25.16. In addition, defense counsel, after speaking with Dorothy Petty, neither renewed her objection that she was unable to adequately prepare before trial to meet the testimony, nor claimed additional time would have afforded Defendant an opportunity he had not already availed himself. Furthermore, defense counsel cross-examined Dorothy Petty about the threats. The evidence was secondary and cumulative, and counsel met it professionally. We find no prejudice.

■■■ Defendant also complains the state was allowed to elicit testimony from Tiffany Jones, an unendorsed witness, on rebuttal about her knowledge of Defendant's

threats. The state did not endorse Tiffany Jones as a possible witness. Generally, there is no need to endorse a rebuttal witness unless they are called to rebut an alibi. *State v. Menteer*, 845 S.W.2d 581, 586 (Mo. App.E.D.1992). Tiffany Jones revealed that after the argument she met with Massey. He told her about the argument with Defendant, and he said he was afraid Defendant would kill him. She stated this occurred sometime within the year before Massey's death. Defendant argues the testimony of Tiffany Jones dramatically affected his case because deliberation was the main issue, and her testimony went directly to that issue. For the reasons we found no error in allowing Dorothy Petty to testify as to Defendant's threats, we find the court's refusal to exclude Defendant's statements through Tiffany Jones' testimony did not result in fundamental unfairness or prejudice.

Second, Defendant argues the alleged threats made by Defendant against Massey were improperly admitted as evidence of motive. They were not admissible as exceptions to the hearsay rule as evidence of state of mind, because state of mind of the victim is not admissible to show Defendant's motive. This argument was not preserved in Defendant's motion for new trial. Rule 29.11(d); *Washington*, 846 S.W.2d 794 at 795. We review for plain error. Rule 30.20; *Ellsworth*, 908 S.W.2d 375 at 378.

■ The state is permitted to prove motive. *State v. Randolph*, 698 S.W.2d 535, 540 (Mo.App. E.D.1985). Motive is not an element of first degree murder. *State v. Durham*, 822 S.W.2d 453, 455 (Mo.App.1991). Motive concerns the state of mind of a defendant, not that of the victim. *Randolph*, 698 S.W.2d at 540. In addition, not all out-of-court statements are hearsay. *State v. Copeland*, 928 S.W.2d 828, 848 (Mo. banc 1996) *cert. denied*, —— U.S. ——, 117 S.Ct. 981, 136 L.Ed.2d 864 (1997). The hearsay rule only prohibits admission of evidence of out-of-court statements offered to prove the truth of the out-of-court declaration. *Id.*

During oral motions in limine, Defendant conceded his threats could be used to show motive and intent, but argued the evidence was not reliable due to remoteness in time. The state argued it would only offer the testimony to show motive. It argued Defendant's motive at the time of the murder was not to protect Massey from Payne, but to show he was working with Payne and that they had a relationship and he was there to protect Payne's business interest, not to protect his family or personal interests. The evidence does not support any claimed error, plain or otherwise, in admitting Defendant's threats.

Defendant also claims the court erred in admitting statements regarding what Massey told Tiffany Jones because the statements were hearsay, offered for no other reason than to prove the truth of the matter asserted—that Massey was afraid of Defendant. He contends this hearsay was not admissible under the state of mind exception to the hearsay rule. We suspect he is addressing the following:

[STATE]: Describe for the jury how [Massey] acted when [Massey] described this argument to you?

[STATE]: Who did he tell you he was? Who did he tell you he was afraid of?

[JONES]: He told me he was afraid his uncle was going to kill him.

[STATE]: I don't have any[thing] further.

■ It is significant that Defendant failed to object on hearsay grounds when the evidence was introduced at trial. Generally, an objection must be made when the evidence is offered at trial to preserve the issue for appellate review. *State v. Evans*, 895 S.W.2d 637, 638 (Mo.App. E.D.1995). Further, where no objection is made, the admission of hearsay evidence is not plain error. *Id.*

■ Gratuitously, we note this testimony was not hearsay. It was not offered to prove the truth of Massey's statement that he was afraid of Defendant. Instead, the testimony that Massey was afraid of Defendant was admissible to show that Defendant and Massey did not have a good relationship as Defendant claimed and to show motive.

Defendant also argues the court erred in allowing Dorothy Petty's and Tiffany Jones' testimony which included references to De-

fendant as a drug dealer because it was inadmissible evidence of other crimes. He contends, evidence of Defendant's drug dealing was more prejudicial than probative and did not tend to establish his guilt for the crimes he was charged.

■ Although Defendant preserved this issue for appeal with respect to Dorothy Petty's testimony, he failed to object to Tiffany Jones' testimony when it was introduced or in his motion for new trial. The general rule with respect to preservation of error is that an objection stating the grounds must be made at trial, the same objection must be set out in the motion for new trial and must be carried forward in the appeal brief to preserve it. *State v. Jackson*, 948 S.W.2d 138, 141 (Mo.App. E.D.1997). Nothing is preserved because the trial court cannot be considered to have erred. *State v. Pierce*, 932 S.W.2d 425, 430 (Mo.App. E.D.1996). Thus, we limit our review of Defendant's argument to the testimony of Dorothy Petty and *ex gratia* review in light of the similar testimony of Tiffany Jones.

■ The complained of testimony is not set out in Defendant's brief. We suspect Defendant is complaining about evidence which suggests that the subject of the argument was drugs Massey owed to Payne. Evidence of prior uncharged crimes is inadmissible to show a defendant's propensity for committing the charged crimes. *State v. Skillicorn*, 944 S.W.2d 877, 887 (Mo. banc 1997) *cert. denied*, —— U.S. ——, 118 S.Ct. 568, 139 L.Ed.2d 407 (1997). However, such evidence is allowed where there is some legitimate tendency to prove that a defendant committed the charged crimes. *Id.* In addition, the probative value of the evidence must outweigh its prejudicial effect. *Id.* Balancing the effect and value of evidence rests within the sound discretion of the trial court. *State v. Bernard*, 849 S.W.2d 10, 13 (Mo. banc 1993). The recognized exceptions to the rule against admitting evidence of other crimes includes, but are not limited to, evidence of other crimes which tend to establish motive, intent, absence of mistake or accident, or a common scheme or plan. *Skillicorn*, 944 S.W.2d at 887.

During the motion in limine, the state claimed it would only offer the testimony to show motive. The trial court ruling provides:

I have read cases that both counsel have cited in support of their position on Defendant's Motion in Limine plus case I have read on my own and this Court's concern was about the remoteness. I think the evidence does have probative value and, as such, the question then revolves around remoteness, as far as I'm concerned in *State versus Jones*, which quotes *State versus [Muthofer]* located at 835 Southwest 2d at page 378. As stated in *[Muthofer]*, "such matters as remoteness of time go to the weight to be given to the testimony and not admissibility." For that reason, I am concerned and to some extent about getting beyond what counsel for the State offered, in effect, in its offer of proof this morning. I don't want to go into drug dealings or who's working for whom, but as far as the threat, I will allow that for reasons enunciated.

■ We are satisfied the evidence that Defendant threatened Massey over drugs satisfied the motive exception even though it contained a reference to other criminal activity. Generally, parties have wide latitude in developing evidence of motive. *Pierce*, 932 S.W.2d at 431. In dispute was whether Defendant and Massey had a good relationship. Also in dispute was whether the shooting occurred over jewelry or drugs. References to drugs were made in the context of an earlier argument between Defendant and Massey demonstrating they had an adversarial relationship. Defendant had a motive for participating in the shooting—his animus towards Massey through a prior dealing with drugs.

Next, Defendant contends Tiffany Jones' rebuttal testimony was improper because it did not refute any new evidence presented by Defendant and was cumulative, only repeating Dorothy Petty's testimony in the case-in-chief. There was no trial court objection that Tiffany Jones' evidence was cumulative.

■ Determining the scope of rebuttal is the trial court's discretion and, absent an abuse of discretion, we will not reverse

the trial court's decision. *State v. Simmons*, 944 S.W.2d 165, 177 (Mo. banc 1997) *cert. denied*, — U.S. —, 118 S.Ct. 376, 139 L.Ed.2d 293 (1997). Rebuttal evidence may explain, counteract, repel, or disprove a defendant's evidence either directly or by implication. *State v. Hamilton*, 892 S.W.2d 371, 379 (Mo.App. E.D.1995).

During Defendant's introduction of evidence, another sister of Defendant, Alice Webb, testified. Her testimony for Defendant interjected the issues that she kept in contact with Defendant and Massey every week, Defendant and Massey had a good relationship and she had no information that their relationship had changed because of the threat. On rebuttal, Tiffany Jones countered Alice Webb's testimony that she kept in close contact with Massey. Tiffany Jones testified she saw Massey nearly everyday and Massey did not see Alice Webb very often. Instead, Massey spent most of his time with Dorothy Petty. Tiffany Jones also countered Alice Webb's and Defendant's testimony that Defendant had a good relationship with Massey. Tiffany Jones testified that at first it was a normal uncle/nephew relationship, then it got to be hostile and they would get into fights. Furthermore, she testified she picked Massey up after one particular fight with Defendant over drugs, and Massey told her he was afraid Defendant was going to kill him.

■ The testimony that Defendant and Massey did not have a good relationship and had an argument over drugs was brought out in the state's case-in-chief through Dorothy Petty. However, rebuttal testimony is not necessarily inadmissible simply because it is cumulative of the state's evidence-in-chief or because it would have been better procedure to offer it as part of the state's evidence-in-chief instead of rebuttal. *State v. Arnold*, 859 S.W.2d 280, 282 (Mo.App. E.D.1993). We find the trial court's admission of Tiffany Jones' testimony as rebuttal was not an abuse of discretion.

## ADMISSION OF EYEWITNESSES' STATES OF MIND

In his fourth point on appeal, Defendant first argues the trial court erred when it overruled his objection to Marnece Sampa's,

an eyewitness to the shooting, and Officer Robert Schaefer's (Officer) testimony indicating Sampa and other eyewitnesses were afraid to give statements to the police about the shooting. He contends the testimony was irrelevant and more prejudicial than probative. He argues the states of mind of the witnesses do not address or corroborate evidence on any issue in the case, and the state argued facts not in evidence by making it appear as though there were other witnesses who did not come forth to testify out of fear of Defendant. The challenged testimony of Sampa provides:

[STATE]: Were you afraid at the time of the shooting?

[DEFENSE]: Objection, beyond the scope.

[COURT]: Overruled.

[STATE]: Marnece, were you afraid after you saw that shooting?

[SAMPA]: Yes.

[STATE]: What were you afraid of?

[SAMPA]: That they was going to come back and kill me if I turned in the tape.

The challenged testimony of Officer provides:

[STATE]: While you were there investigating the crime were witnesses cooperative with you?

[OFFICER]: No, they were not.

[STATE]: Describe how they acted?

[OFFICER]: Scared.

[STATE]: What makes you say that?

[DEFENSE]: Objection speculation.

[COURT]: The objection is sustained, Officer. You may rephrase your question.

[STATE]: What I want you to tell the jury is describe for the jury how they acted to make you draw those kind of conclusions?

[OFFICER]: They were very reluctant, anybody, even say that they were out on the sidewalk during the shooting. Everybody was saying that they didn't know what happened.

Defendant objected to Sampa's testimony during re-direct examination as "beyond the scope" and objected to Officer's testimony as "speculation." In his motion for new trial, Defendant alleged the issue of relevancy only

for Officer's testimony and the issue of prejudice for both Sampa's and Officer's testimony. The trial court was never presented with the issue of relevancy regarding Sampa's testimony. *Pierce*, 932 S.W.2d at 430. Thus, we limit our review of the issue of relevancy to only Officer's testimony. We review this issue and the issue of prejudice as to both Sampa and Officer for plain error. Rule 30.20; *Ellsworth*, 908 S.W.2d at 378.

On cross-examination, Defendant questioned Sampa as to why she did not want the state to tape her statement. Defendant also asked if the state pressured her to make a statement. Defendant's questions opened the door for the state to ask questions on the issue of witness reluctance. When a defendant has injected an issue into the case, the state may be allowed to admit otherwise inadmissible evidence in order to explain or counteract a negative inference raised by this issue. *Pierce*, 932 S.W.2d at 431. The court did not err when it permitted the state to question Sampa and the later testimony of Officer about witness reluctance.

Second, Defendant argues the trial court erred in overruling his objection to the state's closing argument and failing to give curative instructions. He contends the trial court allowed the state to suggest there were individuals who refused to speak to police and Defendant and Payne actually threatened bystanders. In addition, he contends the court allowed the state to make an irrelevant argument that witnesses were afraid after the crime, and the eyewitnesses who testified at trial were somehow "heroes." The state argued:

> [STATE]: [W]hen you see the witnesses that testified in this case and when you heard how they were, you know, people like Marnece Sampa and people like Pookie, you know, those girls wanted to be here like they wanted to be jumping off the Empire State building. The only reason they're here is they know we've got them on video.
>
> . . . .
>
> ... you hear all these witnesses saying, "we ain't telling you. we don't know nothing. It's on video. Take the video." The one kid that owned the video camera, they

had to handcuff him just to get him to come down to the station. Those people would not be involved because their [lives are at stake].

[DEFENSE]: Objection.

[COURT]: Sustained.

[STATE]: Marnece said, those are her words. She told you that she was afraid those people would kill her.

[DEFENSE]: Objection, misstatement.

[COURT]: Overruled.

Defendant failed to object on the basis of arguing facts not in evidence or relevancy. In his motion for new trial, he never mentioned the issue of arguing facts not in evidence, but did raise the issue of relevancy. In addition, Defendant failed to ask for curative instructions. Thus, we decline to review the issues of arguing facts not in evidence or failure to give curative instructions. *Pierce*, 932 S.W.2d at 430. We limit our review to the issue of relevancy, as a matter of plain error. Rule 30.20; *Ellsworth*, 908 S.W.2d at 378. Defendant contends the portion of closing argument indicating fear of present or absent witnesses was not pertinent to any matter raised at trial and should not have been allowed.

The trial court has considerable discretion in allowing or rejecting argument of counsel, and its rulings are reversible only for an abuse of discretion where the argument is plainly unwarranted. *State v. Armbruster*, 641 S.W.2d 763, 766 (Mo. banc 1982). The state may argue the evidence and all the reasonable inferences from the evidence during closing argument. *State v. Harris*, 870 S.W.2d 798, 814 (Mo. banc 1994) *cert. denied*, 513 U.S. 953, 115 S.Ct. 371, 130 L.Ed.2d 323 (1994). In addition, the state may draw any inferences from the evidence which it believes in good faith are justified. *Id.* Viewed in the context of all the evidence and the nature of the charges, we find no error in the state's argument. There is no evidence the challenged argument was not made in good faith, and the evidence supported a finding witnesses were afraid of Defendant.

## IMPROPER INFERENCE THAT DEFENDANT COMMITTED THE ROBBERY

In his fifth point on appeal, Defendant first argues the court erred in overruling his objection to prosecutor's questions that implied Defendant was the person who actually robbed the Paynes. He contends the true identity of the robber was irrelevant and the questions were prejudicial, asked for the purpose of making Defendant appear to be a "bad person." He challénges the prosecutor's questions which resulted in Linda Payne's responses as follows: (1) she described the robber to the police as weighing 140 pounds; (2) Defendant "hung out" with her son; (3) based on her estimate Defendant weighed 150 pounds; and, (4) Defendant frequented the Mini–Mart. The state disputes that it was trying to create the inference that Defendant robbed the Paynes. Instead, it alleges it was attempting to show that nothing supported Defendant's claim that Massey was the robber, and the evidence Defendant introduced about trying to retrieve stolen jewelry was not true.

Defendant failed to object at trial to questions which elicited the first and second answers. For the third response, Defendant objected on grounds of relevancy to the state's request that Linda Payne estimate Defendant's weight. The objection was overruled. After the question that elicited the fourth response was asked and answered, Defendant objected that the state was trying to support an inference that Defendant was the person who robbed the Mini–Mart, and that inference was not probative. The trial court held, "[y]ou're the one that introduced the robbery. The objection is overruled. We've covered the point." Defendant pleaded the issue of relevancy in his motion for new trial.

▮▮▮ The trial court has broad discretion in ruling on the balance of the value and the effect of evidence, and its decision will be overturned only upon a finding of a clear abuse of that discretion. *State v. Driscoll*, 711 S.W.2d 512, 516 (Mo. banc 1986), *cert. denied*, 479 U.S. 922, 107 S.Ct. 329, 93 L.Ed.2d 301 (1986). Evidence is relevant if it: (1) logically tends to prove or disprove a fact in issue; or, (2) corroborates evidence that itself is relevant and bears on the princi-

pal issue. *Id.* Defendant opened the door to questions about the Mini–Mart robbery. When a defendant has injected an issue into the case, the state may offer otherwise inadmissible evidence in order to explain or counteract a negative inference raised by this issue. *Pierce*, 932 S.W.2d at 431. In dispute was whether the argument between Massey, Defendant and Payne was over jewelry or drugs and Defendant's motive. Linda Payne's testimony tended to disprove that Defendant and Payne went looking for Massey over her stolen jewelry because Massey did not match the description of the robber that she gave to the police. The forensic pathologist described Massey as 214 pounds and 5'11" tall. We find the trial court did not plainly err in allowing the challenged testimony.

Second, Defendant argues the court erred when it allowed the prosecutor in closing argument to imply Defendant was the actual robber because she argued facts not in evidence. The state's challenged closing argument provides:

> [STATE]: Whether this was about a robbery [Massey] may have done or maybe the defendant did and trying to blame his nephew——
>
> [DEFENSE]: Objection, there's no testimony or evidence of that.
>
> [COURT]: Objection's overruled. Ladies and gentlemen you heard the evidence. Be guided by that. Proceed.

▮▮▮ Defendant did not allege this error in his motion for new trial. We review for plain error. Rule 30.20; *Ellsworth*, 908 S.W.2d at 378. We do not find the trial court plainly erred in allowing the state's argument. Any abuse of discretion, if any, was adequately addressed by the court's instruction to the jury after it overruled Defendant's objection. It is presumed the jury will properly follow the instructions given. *State v. Graham*, 916 S.W.2d 434, 436 (Mo.App. E.D. 1996).

## ADMISSION OF THE ROLL OF PHOTOS, FREEZE–FRAME PHOTOS

### AND COLOR STILL PHOTOS

In his final point, Defendant argues the trial court erred in admitting as exhibits, a

roll of sequential photos, freeze-frame photos and color still photos. All exhibits at issue were made from the amateur videotape recording the shooting. First, he argues the photos were prejudicial as a reenactment showing the state's own version of events. He claims the photos distorted time passing and caused the jury to believe Defendant had more time than there actually was in which to deliberate. Furthermore, he argues the photos were cumulative. The freeze-frame photos and the color still photos were not admitted into evidence. We limit our review to the roll of photos.

 The trial court has broad discretion in admission of photographs. *Skillicorn*, 944 S.W.2d at 886. The roll of photos were not a reenactment. They were taken directly from the videotape. Any distortion of time created by the photos was cured when the jury viewed the videotape. The jury was able to assess the amount of time passing. In addition, deliberation is not based upon amount of time. *State v. Brown*, 902 S.W.2d 278, 288 (Mo. banc 1995) *cert. denied*, 516 U.S. 1031, 116 S.Ct. 679, 133 L.Ed.2d 527 (1995). The photos also were not cumulative. The amateur video is not of high quality. It flashes back and forth to different scenes throughout. The majority of the video does not focus on the confrontation between Massey, Defendant and Payne. The photo roll was useful in deciding the issues. Defendant does not contend the still photos were misleading because some frames from the videotape containing the relevant events showing Massey, Defendant and Payne were omitted or out of sequence. The jury saw the video and the photos. They were not misled or confused by seeing only the still photos of the crime. The court's admission of the roll of photos was not error, plain or otherwise.

Second, he argues the trial court erred in failing to give limiting instructions to the jury that: (1) the freeze-frames were merely enhanced views of what actually occurred and were designed to help them understand the case; and, (2) the true evidence was to be found in the testimony of the witnesses. The freeze-frames are not at issue. Defendant concedes he did not request

an instruction when the roll of photos was introduced or challenge the lack of instruction in his motion for new trial. The only available review is plain error. There was no error for failing to *sua sponte* give a limiting instruction. The photo roll was made from the video. The video was direct evidence of the crime. The video was admitted after testimony as to how the roll of photos was produced and the jury saw the video.

Affirmed.

AHRENS, P.J., and CRANDALL, J., concur.