STATE of Missouri, Plaintiff–
Respondent,

v.

James A. MURRAY, Defendant–
Appellant.

James A. MURRAY, Defendant–
Appellant.

v.

STATE of Missouri, Plaintiff–
Respondent.

Nos. 58330, 60378.

Missouri Court of Appeals,
Eastern District,
Division Four.

June 16, 1992.

Donald L. Wolff, Clayton, for defendant-appellant.

William L. Webster, Atty. Gen., Robert Alan Kelly, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SMITH, Presiding Judge.

Defendant appeals from his convictions by a jury of robbery in the first degree and

armed criminal action and his sentence as a persistent offender to two consecutive terms of 25 years. He also appeals from the denial of his post-conviction Rule 29.15 motion.

We affirm.

On January 18, 1989, two men entered the Roosevelt Bank in south St. Louis county. Both men carried firearms and were disguised. The taller man was dressed as a woman and wore a long coat and dress. The shorter man wore a fake fur beard. Three employees of the bank, but no customers, were present when the men entered. The taller man ordered two of the employees into the vault where he took more than $29,000 and put it into a bag. He then returned to the lobby and departed the bank. The shorter man continued to hold his gun on the employees and then backed out the door saying "you can call the police." The robbers left the area in a black newer model car subsequently identified as a Mercury Sable.

Shortly thereafter the two men were seen standing next to a similar black car on a side street in south St. Louis county by Douglas Voss who became suspicious and began chasing the men in his automobile until he lost sight of them as they were running away. By backtracking his movements with the police he found a large stack of money at the place where he last saw the running men. Two of the bank employees were able, somewhat tentatively, to identify defendant as the shorter man who robbed the bank. Voss was able to identify defendant as the shorter of the two men he chased after the robbery.

The police arrested a Steven Fleener and obtained from him an admission of his involvement in the robbery and his implication of defendant in the offense. Defendant was picked up and questioned by the St. Louis County police.

During the direct examination of police officer Hagerty concerning that questioning the following occurred:

Q. After you advised him of his rights, what, if anything, did you say to James Murray or did he say to you?

A. I told Mr. Murray that I was investigating a bank robbery that occurred on January 18th at the Roosevelt Bank on Reavis Barracks Road. Mr. Murray indicated to me that he was not involved in the robbery. However, he told me that he had been told by Bill Sulven that Steven Fleener had been arrested for the robbery.

Q. Did he indicate whether or not he had ever met Steven Fleener or if he knew Steven Fleener.

A. He told me he knew Steven Fleener, and he had been introduced to Steven Fleener by Bill Sulven shortly after New Years of 1989.

Q. Did you ask him if he had ever been with Fleener after that?

A. I did.

Q. And what was his response?

A. His response was that on the—what he told me the day that he was introduced to Steven Fleener by Bill Sulven, the three of them had gone to dinner together at a restaurant in South St. Louis County. He told me also that the only other time he had ever been with Steven Fleener is on one occasion when he was going over to Bill Sulven's house and Steven Fleener happened to be there.

Q. Did you indicate to him anything with regard to his involvement with Fleener again, and a black Mercury Sable?

A. I told Mr. Murray that Steven Fleener had implicated him in the bank robbery and that Fleener had told me the two of them had done the bank robbery together in a black Mercury Sable.

Q. And what was his response?

A. He responded by telling me that Fleener was lying and that he never had been anywhere with him in a black car.

Q. Did you then discuss with Mr. Murray about when he was introduced to Fleener?

A. I then told Mr. Murray that I was well aware of the fact that he was introduced to Steven Fleener by Bill Sulven on January 12th of 1989. And that on the date of the introduction, Bill Sulven asked Fleener to let Mr. Murray do the

bank robbery with him because Mr. Murray needed the money.

Q. What was his response at that time?

A. He immediately—as soon as I said the statement, his immediate response to me was, "Fleener snitched, didn't he?"

■ Initially defendant contends that the trial court erred in denying his motion for judgment of acquittal at the close of all the evidence. In reviewing such an allegation of error we consider the evidence and all inferences reasonably to be drawn therefrom in the light most favorable to the verdict and disregard all contrary evidence and inferences. *State v. Marvel*, 756 S.W.2d 207 (Mo.App.1988) [1-4]. The evidence clearly established that a robbery occurred. Defendant was identified by two of the bank employees at the lineup after the participants in the lineup were required to smile and say "call the police", actions taken by the shorter robber during the robbery. Voss identified defendant as one of the men he chased in the Lemay area shortly after the robbery. The car observed by Voss in close proximity to defendant was similar to the one utilized by the robbers to flee the scene of the robbery. The stolen money was recovered in the area through which Voss chased the defendant. Additionally, while being questioned, defendant made a statement which could reasonably be interpreted as an admission of involvement in the robbery with Fleener. The evidence was sufficient to support the verdict.

■ Defendant also challenges, on a plain error basis, the testimony of detective Hagerty concerning what Hagerty told defendant that Fleener had said to Hagerty concerning defendant's involvement in the robbery. No objection was made to that testimony at trial. Defendant contends that testimony constituted hearsay. The hearsay rule prohibits in court testimony of an extra judicial statement made out of court where the statement is offered as an assertion of the truth of the matters asserted, resting for its value upon the credibility of the out-of-court declarant. *State v. McCann*, 792 S.W.2d 890 (Mo.App.1990) [1,2]. Implicit in the rule is the corollary that a relevant extra judicial statement not offered as proof of the matters asserted is admissible. *State v. Mallett*, 732 S.W.2d 527 (Mo. banc 1987) [8,9]. Testimony offered in explanation of conduct is generally admitted because it is not hearsay. *State v. Jordan*, 751 S.W.2d 68 (Mo.App.1988) [8].

■ The statement before us had relevance in explaining the defendant's statement that "Fleener snitched" without regard to the truth of the statements made by Fleener to Hagerty. As defendant points out in his brief in a different context the words "Fleener snitched, didn't he?" do not, standing alone, constitute an admission of participation by defendant in the robbery. We have set out the testimony of Hagerty in full leading up to the statement by the defendant in order to demonstrate the context in which the testimony was given. Until the "snitched" statement by the defendant he had consistently denied participation in the robbery or more than a slight acquaintanceship with Fleener. The officer's continuing revelation of more and more of the information which had been given to him by Fleener was ultimately what caused defendant to make the statement he did. Only by reference to the entire conversation between Hagerty and defendant was it possible for the jury to place defendant's conduct in making the statement into its proper context. The testimony was elicited for that purpose and not for the truth of its content. No request for a limiting instruction was made. Admission of the testimony was not erroneous.

■ Defendant's final point is a challenge to the trial court denial of his post-conviction motion. Here he bases that challenge on the failure of his counsel to object to the alleged hearsay previously discussed. As we have previously stated, the testimony was not inadmissible. Defense counsel sought to have it excluded pre-trial and was unsuccessful. The actual discussion between defendant and Hagerty contained several references to other crimes committed by defendant including other robberies with Fleener. Defense

counsel worked with the prosecuting attorney to sanitize the testimony of Hagerty to eliminate all references to other crimes. Nothing in this record suggests that the failure to object in any way prejudiced the defendant or that such an objection would have been successful. We find no error in the trial court's denial of defendant's post-trial motion.

Judgments affirmed.

KAROHL and AHRENS, JJ., concur.