**STATE of Missouri, Respondent,**

v.

**Travis GARNER, Appellant.**

**No. ED 75061.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 28, 1999.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 2, 2000.

Application for Transfer Denied
April 25, 2000.

---

1. All further statutory references are to RSMo 1994 unless otherwise indicated.

David C. Hemingway, Asst. Sp. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty.Gen., Catherine Chatman, Asst. Atty. Gen., Jefferson City, for respondent.

SHERRI B. SULLIVAN, Judge.

This appeal arises out of the convictions of Travis Garner (Appellant) of two counts of murder in the first degree, in violation of § 565.020 RSMo (1994),[1] and two counts of armed criminal action, in violation of § 571.015. Appellant challenges the sufficiency of the evidence to support his convictions. We affirm.

Appellant and Cornell White were convicted for the murders of brothers Tim and Johnny Bolden. The Bolden brothers were found dead on the afternoon of March 17, 1997, in their house at 6249 Julian in the City of Wellston. Evidence was presented at trial that Tim Bolden sold crack cocaine from the house in which he and his brother lived. Evidence was also presented that Johnny Bolden was addicted to crack cocaine, which he either purchased or stole from his brother. Tim Bolden used the money he received from selling crack cocaine to purchase heroin for himself. There was testimony presented at trial that Tim Bolden was in debt to Appellant, who sold him the crack cocaine.

Detective Edward Vitt was assigned to solve the case. Vitt testified that the victims' mother, Ernestine Bolden, named Appellant as a potential suspect. The victims' sister, Roxanne Bolden, testified that approximately two months before the murders, Appellant and other men came to the residence on Julian to collect a drug debt. Roxanne lived with the victims at the house on Julian at the time. She testified that two of Appellant's friends, who were armed, were holding Tim Bolden by the arms, and Tim was bleeding from the side of his face. She testified that Appellant threatened Tim about repayment of a drug money debt. Specifically, Appellant said he needed his money and if he did not get it he would be back. Ernestine Bolden also testified to these events.

Renee Hampton testified that around noon on March 15, 1997, she overheard a conversation between Appellant and Tim Bolden by some pay phones outside a liquor store. She stated that Tim Bolden said he did not have all the money he owed Appellant, and Appellant replied that he had to have his money or he would kill Tim and anybody with him.

Detective Vitt testified that during his investigation Bobby Carson had told him he was at the Bolden brothers' house the night of Sunday, March 16, 1997, with the Boldens and Chris and Nicholas Miller. Vitt testified that Carson had stated that Appellant abruptly pulled the doorway curtain aside and angrily demanded payment of a debt. Vitt recalled Carson had stated that Appellant's tone of voice was such that Carson felt something was going to happen, and so Carson moved toward the door. Vitt testified that Carson had said that Appellant stopped Carson, but Tim Bolden requested that Appellant let Carson pass, because Carson did not have anything to do with their situation. Carson left. At trial, Carson denied that he had made those statements to Vitt.

Furthermore, the Court also allowed Vitt to testify as to statements made to him by Nicholas Miller during Vitt's investigation. Vitt testified that Nicholas Miller had told him that he, Nicholas Miller, was in the Boldens' house the evening of March 16, 1997, with the Bolden brothers, his brother Chris Miller, and Bobby Carson. Vitt testified that Miller had said there was a knock at the door, and Appellant and Cornell White entered the room. Vitt testified that Miller stated Appellant had been upset about repayment of a debt for drugs and Miller had advised Vitt that

---

1. All further statutory references are to RSMo (1994) unless otherwise indicated.

something was going to happen; therefore Miller stated that he left through the back door. As he left through the back door, Miller stated to Vitt that he heard shots being fired. At trial, Nicholas Miller denied he made these statements to Vitt.

Police found a shoe impression on a bloody sheet in the room where the victims' bodies were found, that later was found to match the size and tread design of the right heel of a pair of boots retrieved from Cornell White's home. Other specimens of blood that were consistent with Cornell White's blood were recovered. No prints of Appellant were discovered at the scene of the crime. The police never recovered a gun connected to the crime.

Appellant filed a Motion for Judgment of Acquittal at the Close of all the Evidence, which was denied. A jury in the Circuit Court of St. Louis County convicted Appellant of two counts of murder in the first degree, in violation of § 565.020, and two counts of armed criminal action, in violation of § 571.015. The trial court sentenced Appellant as a prior offender to two terms of life imprisonment without eligibility for probation or parole for murder in the first degree and two terms of life imprisonment for armed criminal action, all terms to be served consecutively. Appellant timely filed his Notice of Appeal.

On review, the appellate court accepts as true all of the evidence favorable to the State, including all favorable inferences drawn from the evidence and disregards all evidence and inferences to the contrary. *State v. Grim,* 854 S.W.2d 403, 411 (Mo. banc 1993); *State v. Dulany,* 781 S.W.2d 52, 55 (Mo.banc 1989). Review is limited to determining if there is sufficient evidence from which a reasonable juror might find the defendant guilty beyond a reasonable doubt. *Grim,* 854 S.W.2d at 411; *Dulany,* 781 S.W.2d at 55. This standard applies to both direct and circumstantial evidence. *Grim,* 854 S.W.2d at 405. A trial court is vested with broad discretion over questions of relevancy and the admissibility of evidence, and the reviewing court will not interfere with those decisions unless there is a clear showing of abuse of discretion. *State v. Hutchison,* 957 S.W.2d 757, 763 (Mo.banc 1997).

The appellate court neither weighs the evidence nor evaluates the credibility of the witnesses. *State v. Pierce,* 932 S.W.2d 425, 427 (Mo.App. E.D.1996). Questions of witness credibility are questions for the jury, and it is within the jury's province to believe all, some or none of the witnesses' testimony in arriving at its verdict. *State v. Jeffries,* 858 S.W.2d 821, 824 (Mo.App. E.D.1993).

■ Appellant's first point on appeal is that the trial court erred in denying Appellant's motion for judgment of acquittal at the close of all evidence because the State did not present substantial evidence sufficient to prove guilt beyond a reasonable doubt, in that the only evidence of Appellant's criminal agency in the crimes consisted of unrecorded out-of-court statements Detective Vitt attributed to Bobby Carson and Nicholas Miller, which both witnesses denied making. Appellant asserts that repudiated prior inconsistent statements cannot form the sole proof of a defendant's actual commission of a crime under the due process threshold.

Section 491.074 expressly provides that prior inconsistent statements may be admissible in certain cases as substantive evidence: "Notwithstanding any other provisions of law to the contrary, a prior inconsistent statement of any witness testifying in a trial of an offense under chapter 565, [2] 566 or 568, RSMo, shall be received as substantive evidence, and the party offering the prior inconsistent statement may argue the truth of such statement."

In *State v. Pierce,* cited by Appellant in support of his argument, the defendant

---

2. Appellant was charged with first-degree murder under Section 565.020, which provides: "A person commits the crime of murder in the first degree if he knowingly causes the death of another person after deliberation upon the matter."

was convicted of statutory rape based on the prior inconsistent statement of the victim that the defendant had sexual intercourse with her. 906 S.W.2d 729, 733 (Mo. App.W.D.1995). At trial, the victim recanted her statement. The court of appeals held that although the victim's prior inconsistent statement was properly admitted pursuant to § 491.074, the conviction could not be based solely on a prior inconsistent statement, which is repudiated at trial, in the absence of any corroborating evidence. *Id.* at 734–735. This ruling is an exception to the rule that a prior inconsistent statement can serve as the sole basis for a finding of guilt, carved out for circumstances in which the witness's testimony is contradictory. *Id.*

In the instant case, unlike in *Pierce,* the out-of-court statements made by Bobby Carson and Nicholas Miller were not the only evidence presented to prove Appellant's guilt of first-degree murder and armed criminal action. Evidence was presented at trial that Tim Bolden sold crack cocaine and used the proceeds from the sales to purchase heroin for his own use. Evidence was also presented that Tim Bolden owed Appellant money for drugs. Roxanne Bolden testified that Appellant physically and verbally threatened Tim about repayment of a drug money debt. Roxanne Bolden testified that she heard Appellant threaten Tim Bolden that if he did not receive the money Tim owed him, Appellant "would be back." Ernestine Bolden also testified to these events. Renee Hampton testified that the day before the murders, she heard Appellant directly threaten Tim Bolden that he would kill him, and anyone who was with him, if he did not get his money.

This evidence corroborates the out-of-court inconsistent statements recounted by Detective Vitt. Appellant's conviction was not based solely on the repudiated statements. Accordingly, Appellant's Point I is denied.

■ Appellant's second and third points on appeal are similar and so we shall ad-dress them together. Appellant's second point on appeal is that the trial court erred in letting the State produce Detective Vitt's claim that Bobby Carson made a prior inconsistent statement on June 30, 1997 that he was in the Bolden brothers' house on Sunday, March 16, 1997 when Appellant and another man appeared and became hostile, in that Bobby denied telling Detective Vitt anything of the sort. Appellant maintains that the trial court wrongly concluded the rule in *State v. Oliver,* 775 S.W.2d 308, 310 (Mo.App. E.D. 1989), changed in *State v. Chandler,* 860 S.W.2d 823, 825 (Mo.App. E.D.1993). Appellant further argues that Vitt's claim about Bobby's prior statement lacked circumstantial guarantees of veracity because (1) the Boldens corroborated Bobby's belief that he was last in the house on Julian on Saturday, March 15, (2) Vitt set out to connect Appellant to the crime once Ernestine Bolden proposed him as a suspect, (3) Vitt claimed he kept Bobby Carson at the station from 10:15 a.m. into the evening trying to bond with him, during which time Bobby maintained he did not know anything, (4) Vitt did not claim any other officer was present then, and (5) Bobby did not testify that he made any statement in the late evening.

Appellant's third point on appeal is that the trial court erred in letting the State produce Detective Vitt's claim that Nicholas Miller made a prior inconsistent statement on June 30, 1997 that he was in the Bolden brothers' house on Sunday March 16, 1997 when Appellant and another man appeared and became hostile, in that Nicholas denied telling Detective Vitt that he saw Appellant there, or that Appellant prevented him from leaving. Appellant maintains that the trial court wrongly concluded the rule in *State v. Oliver* had changed, as explained in Point II on appeal. Appellant maintains Vitt's claim about Nicholas's prior statement lacked circumstantial guarantees of veracity because Vitt set out to connect Appellant to the crime once Ernestine Bolden proposed

him as a suspect, and Nicholas made no mention of Bobby Carson being present though under Vitt's recounting the two claimed to witness identical acts. Appellant also claims that Vitt's veracity was subject to doubt in light of Nicholas's testimony that the detective angrily threatened to charge him if he did not give the statements Vitt wanted. The fact that Nicholas picked out the photos of Appellant and Cornell White does not prove he told Vitt he saw them at the scene, asserts Appellant, because Nicholas and Vitt testified the officer just had Nicholas pick out anyone he knew.

▉ As noted above, Section 491.074 expressly provides that prior inconsistent statements may be admissible in certain cases as substantive evidence: "Notwithstanding any other provisions of law to the contrary, a prior inconsistent statement of any witness testifying in a trial of an offense under chapter 565, 566 or 568, RSMo, shall be received as substantive evidence, and the party offering the prior inconsistent statement may argue the truth of such statement." This statute permits the trial court to receive prior inconsistent statements of a witness, even though the witness disaffirms the statements under oath. *State v. Bowman*, 741 S.W.2d 10, 12 (Mo.banc 1987). The admission of such inconsistent statements does not violate the confrontation clauses of the Missouri or the Federal constitution, where the witness is present in court and subject to cross-examination. *Id.* The only necessary foundation for the admission of the statement pursuant to this statute is the inquiry of whether the witness made the statement, and whether the statement is true. *Bowman*, 741 S.W.2d at 14; *Chandler*, 860 S.W.2d at 825.

Appellant argues that in *Chandler*, this Court found the witness's prior statement not prejudicial because the defendant was *acquitted.* Accordingly, argues Appellant, *Chandler*'s holding is not applicable to the case at bar.

The *Chandler* Court first found the statement was admissible under the statutory provision, and then *further* found it was not prejudicial because the testimony related to the assault on the testifying witness, and the defendant was acquitted on those charges. *Chandler*, 860 S.W.2d at 825. The defendant's acquittal was not determinative as to the applicability of § 491.074.

Appellant relies on *Oliver*, 775 S.W.2d at 310, for its holding that in a criminal case, the prior inconsistent extrajudicial statements of a witness may not be admitted as substantive evidence when the witness denies at trial having made the statements. *Id.* at 310. This holding in *Oliver* is not in accord with later cases. See *Chandler*, 860 S.W.2d at 825; *State v. Blankenship*, 830 S.W.2d 1, 12 (Mo.banc 1992); *State v. Woodworth*, 941 S.W.2d 679, 691 (Mo.App. W.D.1997) (specifically casting doubt on *Oliver*'s holding and suggesting *Chandler*'s holding overruled *Oliver* sub silentio). *Oliver* should not be followed for the reasons set forth above.

▉ Appellant's argument of lack of circumstantial veracity is meritless, as circumstantial veracity is not required in the analysis of admissibility of unrecorded out-of-court statements. However, Appellant's argument poses the issue of credibility of the witnesses. This Court neither weighs the evidence nor evaluates the credibility of the witnesses. *Pierce*, 932 S.W.2d at 427. Questions of witness credibility are questions for the jury and it is within the jury's province to believe all, some or none of the witnesses' testimony in arriving at its verdict. *Jeffries*, 858 S.W.2d at 824. Accordingly, Appellant's contentions that: (1) the Boldens corroborated Bobby's belief that he was last in the house on Julian on Saturday, March 15, (2) Vitt set out to connect Appellant to the crime once Ernestine Bolden proposed him as a suspect, (3) Nicholas made no mention of Bobby Carson being present though under Vitt's recounting the two claimed to witness identical acts, (4) Vitt's veracity was sub-

ject to doubt in light of Nicholas's testimony that the detective angrily threatened to charge him if he did not give the statements Vitt wanted, and (5) Nicholas and Vitt testified the officer just had Nicholas pick out anyone he knew as opposed to anyone he saw at the scene of the crime, are all matters of credibility to be determined by the trial judge. Appellant's Points II and III are denied.

■ Appellant's fourth point on appeal is that the trial court erred in letting the State produce testimony of Roxanne and Ernestine Bolden and Tekeisha Jones about Appellant's demand for repayment of a drug debt two months before the Bolden brothers were murdered, in violation of the 14th Amendment due process and 6th Amendment fair trial guarantees against conviction except on proof of the crime charged. Appellant argues the probative value of the prior demand for repayment was minimal since the earlier debt was repaid, and its admission was prejudicial in that it encouraged the jury to convict based on a presumed propensity to violence. Appellant maintains the error cannot be deemed harmless because this evidence distracted the jury from the reasonable doubts raised in the testimony of State witnesses, Bobby Carson, Nicholas Miller and Renee Hampton.

■ The general rule concerning the admission of evidence of uncharged crimes, wrongs or acts is that evidence of prior uncharged misconduct is inadmissible for the purpose of showing the propensity of the defendant to commit such crimes. *State v. Bernard,* 849 S.W.2d 10, 13 (Mo. banc 1993). Exceptions to the general rule provide for the admission of evidence that tends to establish motive, intent, the absence of mistake or accident, or a common plan or scheme. *Id.* In this case, evidence of the prior incident in which Appellant threatened Tim Bolden was relevant in that it showed motive for the murders.

■ The probative value of the evidence also must outweigh its prejudicial effect. *State v. Skillicorn,* 944 S.W.2d 877, 887 (Mo.banc 1997). Appellant argues the prejudicial effect of this evidence outweighs its probative value because there was evidence presented that Tim Bolden had paid his debt to Appellant, and therefore it was not necessary to present testimony regarding Appellant's threats. However, the evidence shows that after the debt was allegedly paid, Appellant continued to threaten Tim Bolden for money he owed Appellant for drugs. Therefore, evidence that Tim Bolden paid Appellant two hundred dollars out of the two hundred and forty dollars he allegedly owed him is not conclusive of the matter. There is no evidence that this was the only debt Tim Bolden had to Appellant. There was no showing that Tim Bolden, as a habitual drug user, did not renew his debt to Appellant. Accordingly, the prejudicial effect of this evidence does not outweigh its probative value.

The trial court did not abuse its discretion in overruling Appellant's objection to the admission of this evidence. Point IV is denied.

■ Appellant's fifth point on appeal is that the trial court erred in permitting the State to present Renee Hampton's testimony about hearsay statements she attributed to Timothy Bolden in that Timothy Bolden's hearsay statements were offered for the truth of the matters asserted and were not admissible under any exception to the hearsay rule. Appellant maintains the error was not harmless since the State used this hearsay to convince the jury that Tim Bolden lacked the money to repay the alleged drug debt to prove the purported motive Appellant had to commit the crimes charged.

At trial, Renee Hampton testified that on the day before the murders, she heard Appellant ask Tim Bolden about money that he owed Appellant. Renee Hampton stated that Tim Bolden said he did not have all of it. She recounted that Appel-

lant said he wanted his money or someone was going to get hurt, and that if he did not get his money he would kill Tim Bolden and anyone who was with him. The trial court overruled Appellant's objection to this testimony as hearsay.

As a preliminary matter, Appellant's statements come within the admissions exception to the hearsay rule. An admission is the statement or conduct of a party that tends to incriminate or connect him with the crime charged, or which manifests consciousness of guilt. *State v. Isa*, 850 S.W.2d 876, 894 (Mo.banc 1993). Appellant's statement that he would kill Tim Bolden and anyone with him if he did not get his money, the day before Tim and Johnny Bolden were murdered, tends to incriminate or connect him with the murders, to say the least. In determining whether Appellant's statement constitutes an admission, we must consider Appellant's statement in light of the surrounding circumstances. *Isa*, 850 S.W.2d at 894; *State v. Spica*, 389 S.W.2d 35, 53 (Mo.1965); *State v. Girardier*, 801 S.W.2d 793, 796 (Mo.App. E.D.1991). Tim Bolden's statements are part of the surrounding circumstances.

Appellant maintains the State used Tim Bolden's statement to convince the jury that Tim Bolden lacked the money to repay the alleged drug debt, in order to prove Appellant's motive to commit the crimes charged. Appellant's own statements were proof of his motive, and Tim Bolden's statements were merely the surrounding circumstances. Further, Tim Bolden's statements were not offered for the truth of the matter they asserted, i.e. that he owed Appellant money. A relevant extra judicial statement that is not offered as proof of the matter asserted is admissible. *State v. Murray*, 840 S.W.2d 241, 243 (Mo.App. E.D.1992). The testimony of Tim Bolden was given in order to demonstrate the context in which Appellant's testimony was given, *Id.* at 243, and not to prove the truth of what Bolden said. Rather, it was Appellant's statement that

he would kill Tim Bolden and anyone with him if he did not get his money, which was offered for its truth and to prove Appellant's motive.

Appellant's statement constitutes an admission. Tim Bolden's statements constituted surrounding circumstances of Appellant's admission against interest and were not offered for the truth of the matter asserted. Accordingly, the trial court did not err in allowing the admission of this evidence. Appellant's Point V is denied.

Appellant's sixth point on appeal is that the trial court erred in overruling Appellant's objection to the prosecutor's arguments that Renee Hampton and the rest of the State's witnesses feared danger to their lives by testifying, because no witness testified that they were threatened by Appellant or anyone else, yet the State argued that Appellant posed a threat to the safety of the witnesses to promote the image of Appellant as a dangerous, threatening man to distract the jury from the substantial doubts warranted in the State's case.

Appellant maintains the prosecutor in this case improperly argued matters not in evidence when he argued in summation:

MR. SIDEL: [Timothy] owed [appellant] money and continued to owe him money. We know from Renee Hampton, she was very courageous – And talk about survival skills. These people are fearful of coming in here and testifying.
MR. BRUNS [Defense Counsel]: Objection. Improper argument.
THE COURT: It's argument. Be overruled.
MR. SIDEL: You saw the witnesses. Remember the witnesses that know [Appellant] that came in here and testified. Renee had – at least had the courage to say what she actually saw. All of these witnesses who came in here and made statements to the police, we know that, but making statements to a police officer in the protective environment of a police station room with only a police officer

standing there listening to you is a whole lot different than saying it while he's looking at them. Remember how those witnesses, particularly, Nick Miller and Bobby Carson, behaved in the courtroom.

Even Renee did everything she could to avoid eye contact. At least she told what she saw, and that was that on Saturday, March 15th, she's on a pay phone at Page, I think she said, between Hodiamont and Skinker, which is right in that area, and she sees [Appellant], and she sees Tim . . . .

Defense counsel pointed out in his closing argument that the State's witnesses testified they were not "scared" and they had not been threatened:

MR. BRUNS: You're the people who sat here and heard the evidence, and you've heard Mr. Sidel's first part of his argument. And what's the thing here? He is like, everyone is scared, everyone is scared, everyone is scared.

And that's the only way he's ever going to get you to convict. But the fact is that the evidence isn't there. I mean, Nicholas Miller and Bobby Carson, they testified, I am not scared, I am not scared. You know, how can I ever prove — how can I ever prove they weren't threatened other than what they say?

■■■■ The Court reviews the trial court's allowance of the State's closing argument for abuse of discretion. *State v. Jones,* 979 S.W.2d 171, 176 (Mo.banc 1998). Trial courts have broad discretion in allowing argument of counsel, and its rulings are reversible only for abuse of discretion where the argument is plainly unwarranted. *Id.* at 176. Counsel is entitled to wide latitude in making a summation. *State v. Crump,* 986 S.W.2d 180, 188 (Mo.App.E.D.1999). Prosecutors are entitled to argue matters supported by the evidence and reasonable inferences therefrom. *Id.* Absent abuse of discretion resulting in prejudice to the defendant, the

trial court's rulings on such issues should not be overturned on appeal. *Id.*

In this case, the witnesses' fear of Appellant could reasonably be inferred from the denials at trial by Bobby Carson and Nicholas Miller of their previous statements implicating Appellant. It could also be inferred from the callous manner in which Appellant committed the murders. As the State points out as well, the evidence showed that Appellant had friends or associates whom he could call upon to assist him in intimidating and hurting others. The prosecutor was entitled to argue that the witnesses were afraid of Appellant because that was a reasonable inference from the evidence presented at trial. Accordingly, the trial court did not abuse its discretion in overruling Appellant's objection to the prosecutor's closing argument.

In his final summation, the prosecutor argued:

MR. SIDEL: Mr. Bruns said that [Appellant] never threatened Bobby Carson, never threatened Nicholas Miller. Look, these guys are from that neighborhood. These guys know what happened to this man. Don't you think a threat is implicit if somebody is so mean and cold that they can do that or have it done to somebody else that you know that's not a real good thing to go against them ever? Those threats are implicit.

■■■■ Defense counsel did not object to this portion of the prosecutor's final summation, and therefore waived this claim of error. *State v. Parker,* 886 S.W.2d 908, 922–23 (Mo.banc 1994). The appellate court, however, may review it for plain error. Under the plain error standard of review, the appellate court reviews to determine if the alleged error is of such kind that it affects substantial rights that, even not properly preserved, it will result in manifest injustice or miscarriage of justice. Rule 30.20. Plain error relief as to closing argument should rarely be granted and is generally denied without explanation. *State v. Hanson,* 974 S.W.2d 617, 619 (Mo.App. E.D.1998). Here, we find no

plain error. Appellant's sixth point on appeal is denied.

The judgment of the trial court is affirmed.

CRANE, P.J. and ROBERT G. DOWD, Jr., J., concur.