

## Missouri Court of Appeals

### Southern District

### Division Two

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | |
| vs. | ) | No. SD37032 |
| | ) | |
| LUTHER JOHN CHRISTIANSON, JR., | ) | **Filed:  April 5, 2022** |
| | ) | |
| Defendant-Appellant. | ) | |

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

The Honorable Mark A. Powell, Judge

**AFFIRMED AND REMANDED WITH INSTRUCTIONS**

Luther John Christianson, Jr. ("Defendant") was charged by felony information with committing the following four offenses:  one count of the class D felony of domestic assault in the second degree in violation of section 565.073 (Count 1); one count of the class D felony of endangering the welfare of a child in the first degree in violation of section 568.045 (Count 2); one count of the class A misdemeanor of domestic assault in the fourth degree in violation of section 565.076 (Count 3); and one count of the class D felony of abuse or neglect of a child in violation of section 568.060 (Count 4).[1]

---

[1] *See* sections 565.073, 568.045, 565.076 RSMo Cum.Supp. 2017, and 568.060.  All statutory citations are to RSMo 2016, unless otherwise indicated.  All rule references are to Missouri Court Rules (2021).  Full names are redacted pursuant to section 595.226.  Counts 1, 2, and 3 pertained to an incident that occurred

1

Following Defendant's waiver of his right to a jury trial, the trial court found Defendant guilty of misdemeanor domestic assault of his Child in the fourth degree (Count 3) and guilty of felony abuse or neglect of his Child (Count 4),[2] and sentenced Defendant to concurrent terms of one-year incarceration. Defendant appeals those convictions. Defendant raises one point on appeal. Defendant argues the trial court abused its discretion in overruling his objections and admitting into evidence the recording of a 911 call describing the 2018 domestic disturbance because the recording contained inadmissible hearsay and violated the Confrontation Clause. We affirm because the record supports that the challenged evidence was admissible under hearsay exceptions and that the Confrontation Clause was not violated. We remand to the trial court for it to correct clerical errors in a judgment *nunc pro tunc*.

## Factual and Procedural Background

Defendant does not challenge the sufficiency of the evidence to support his convictions, and we limit our discussion of the facts to the evidence relevant to the 2018 incident involving Wife's 911 call. "We relate the relevant facts in the light most favorable to the verdict." ***State v. Kleeschulte***, 618 S.W.3d 246, 249 (Mo. App. S.D. 2021). Viewed from this perspective, the following evidence was adduced at trial.

Defendant was married to Wife and had Child.[3] On December 18, 2018, Defendant and Wife got into an argument as they were getting in their van to go to

---

on or about December 19, 2018, where Defendant allegedly assaulted his wife, H.C. ("Wife"), and stepped on his son, L.C., III ("Child"). Count 4 pertained to an incident that occurred on or between December 20, 2017, and December 23, 2017, where Defendant allegedly struck Child's face.

[2] The trial court found Defendant not guilty of Count 1 involving Wife and Count 2 involving Child.

[3] Defendant and Wife were married in May 2017 and had Child in August 2017.

2

Walmart. Defendant became frustrated and aggravated, announced that he wanted to go by himself, and told Wife to go back in the house with the children.[4] Wife testified that Defendant came back into the house yelling after Wife. At some point, Defendant stepped on Child's arm with his cowboy boot. Defendant grabbed Wife by her sweatshirt and pushed her onto the couch while she was holding Child, who landed near the pillows. Defendant continued to hold Wife down and put more pressure on her chest until she could no longer breathe. There were red marks on Wife's lower neck and collarbone region from Defendant holding her down and applying pressure on her chest area.

Wife called Springfield Greene County 911, identified herself by her first name and later identified herself as Defendant's Wife. A recording of this call was admitted into evidence and played for the trial court. The recording reflected the following. Wife reported to the 911 dispatcher that Defendant put his hands on her throat and slammed her onto the couch. Defendant could be heard coming back into the house in the background of the 911 call, yelling "pack your shit and get out of my house" and "I'm seeing a lawyer, we're getting a divorce. I'm done with you." Wife was shaken, upset, and emotional during the phone call. Wife began to sob as she reported that Defendant had stepped on Child's arm.

Greene County Sheriff's Department Deputy Meggan Hartman ("Deputy Hartman") responded to the scene at Defendant and Wife's home in reference to an ongoing domestic disturbance. Wife told Deputy Hartman that she and Defendant were getting ready to go to Walmart, but they had been arguing when she decided to go back in the house because she did not want to be around Defendant. Wife told Deputy Hartman

---

[4] Wife had another child from a prior relationship who also lived in the home.

that Defendant followed her back into the home, placed his hands around her neck, pushed her onto the couch, and choked her to the point that she was unable to breathe. Deputy Hartman testified Wife told her Defendant had stepped on Child's arm. Wife also told Deputy Hartman that Defendant had pushed Wife in September 2018. Deputy Hartman observed red marks around Wife's collarbone and neck region. The red marks on Wife's collarbone and neck region were photographed and admitted into evidence at trial. Deputy Hartman also observed that Child had a "little almost triangular red mark on his shoulder" that appeared to be "fresh or recent[.]" Child was photographed and the photos were entered into evidence.[5] Wife signed a statement saying that Defendant stepped on Child's arm and put his hands on her neck. However, at trial while in the presence of Defendant, Wife recanted her statements that Defendant stepped on Child and testified that Defendant did not step on Child, but rather stepped by or near Child's arm.[6] Wife also testified that Child did not have that mark on him earlier that day when she dressed him and claimed at trial that she did not know how Child got the mark. Wife also testified at trial that Defendant did not choke her, but rather he pushed her down and applied pressure to her chest at the bottom of her throat. Wife testified that Defendant did push hard enough on her chest to restrict her ability to breathe and that the scratch marks in her neck area were due to Defendant's long nails.

[5] Photographs of Child's injuries that were admitted into evidence as exhibits at trial were not made a part of the record on appeal. The exhibits were described in both Wife's and Deputy Hartman's testimony.

[6] Wife claimed at trial that she made up the story about Defendant stepping on Child's arm to get him in trouble. However, she acknowledged she was still married to Defendant, still cared about him, did not want to get him in trouble, and did not want him to go to jail. Wife also admitted that her memory was better closer in time to the incidents than it was at trial.

4

Prior to trial, Defendant filed a Motion in Limine to exclude admission of the 911 recording. The trial court denied the motion. At trial, Defendant renewed his objection that the 911 recording was inadmissible hearsay, that he did not believe that it qualified as an excited utterance exception to the hearsay rule, and that the contents of the recording contained testimonial statements constituting inadmissible hearsay. The trial court overruled Defendant's objection and admitted the 911 recording.

Defendant testified in his own defense at trial that the December 2018 incident began when he and Wife were arguing and getting ready to go to Walmart. Defendant testified that he got mad, frustrated, and aggravated with Wife and told her to stay home. Defendant claimed that Wife ripped Child out of his car seat, slammed the side door closed, hit the passenger window, and started punching the windshield. Defendant followed her into the home claiming he was upset with Wife as she could have shattered the windshield and hurt Child. Defendant admitted that he told Wife "she needs to calm the fuck down" upon entry into the house. Defendant denied Wife was holding Child, but did not remember where Child was in the commotion. Defendant testified that as the "frustration got higher" Wife pushed him, so he grabbed Wife's sweatshirt, pushed Wife onto the couch, and held her there to calm her down and get her to quit hitting him. He denied ever grabbing Wife's throat.

Defendant testified he was wearing square toe cowboy boots on the night of the incident, but denied stepping on Child. When asked whether it was possible that he stepped on Child without knowing it, Defendant replied, "I don't know."

Defendant also admitted in his testimony that he left the house right after the incident, came back shortly thereafter, and could be heard on the 911 call telling Wife to leave his house, that he was getting a lawyer, and that he wanted a divorce.

The trial court found Defendant guilty of Count 3, domestic assault in the fourth degree, for stepping on Child in December 2018, and Count 4, abuse or neglect of a child, for striking Child in December 2017. The trial court found Defendant not guilty of Count 1, domestic assault in the second degree, and Count 2, endangering the welfare of a child in the first degree. The court sentenced Defendant to concurrent terms of one-year incarceration for both Counts 3 and 4. Defendant appeals his convictions of Counts 3 and 4.

## Standard of Review

The trial court's decision to admit evidence is reviewed for abuse of discretion. *State v. Williams*, 548 S.W.3d 275, 287 (Mo. banc 2018). The trial court's evidentiary ruling "'will not be disturbed unless it is clearly against the logic of the circumstances.'" *Id.* (quoting *State v. Prince*, 534 S.W.3d 813, 818 (Mo. banc 2017)). Defendant bears the burden of overcoming the presumption that a discretionary ruling is correct. *State v. Gott*, 523 S.W.3d 572, 578 (Mo. App. S.D. 2017). "'We further note that we review for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial.'" *State v. Burge*, 596 S.W.3d 657, 661 (Mo. App. S.D. 2020) (quoting *State v. Bumbery*, 492 S.W.3d 656, 665 (Mo. App. S.D. 2016)). We review whether a defendant's constitutional rights were violated *de novo*. *State v. March*, 216 S.W.3d 663, 664-65 (Mo. banc 2007).

**Discussion**

In his only point on appeal, Defendant contends that Wife's statements in the 911 recording are hearsay statements in violation of the Confrontation Clause and should not have been admitted into evidence. Defendant abandons his Confrontation Clause objection because Wife testified at trial, and now only raises common law hearsay.[7] In this case, Wife did testify at trial, but her statements regarding the domestic altercation involving her and Child were introduced into evidence through her conversation with the 911 dispatcher. These statements were out-of-court statements used to prove the truth of the matter asserted – that Defendant stepped on Child and choked Wife. Therefore, the statements made on the 911 recording are hearsay.

Any out-of-court statement used to prove the truth of the matter asserted and that depends on the veracity of the statement for its value is hearsay. *State v. Kleeschulte*, 618 S.W.3d 246, 250 (Mo. App. S.D. 2021). Generally, hearsay is not admissible unless

---

[7] Although Defendant expressly abandons his Confrontation Clause claim, he later argues in his brief that Wife's statements to the 911 operator were testimonial hearsay "bringing the Confrontation Clause into play." However, *Crawford v. Washington*, 541 U.S. 36 (2004), and subsequent Missouri cases state:

> [w]here[,] as here, "the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." [*Crawford*, 541 U.S. 36 at 59 n.9, 124 S.Ct. 1354, 158 L.Ed.2d 177.] "The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." *Id.* "Where the declarant is not absent, but is present to testify and to submit to cross-examination, our cases, if anything, support the conclusion that the admission of his out-of-court statements does not create a confrontation problem." [*California v. Green*, 399 U.S. 149, 162, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970).] "[T]he Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination." [*Id.* at 158, 90 S.Ct. 1930.]

*State v. Kleeschulte*, 618 S.W.3d 246, 251–52 (Mo. App. S.D. 2021) (quoting *State v. Howell*, 226 S.W.3d 892, 896 (Mo. App. S.D. 2007)). In this case the Confrontation Clause was not violated because Wife, the declarant, testified at trial and Defendant had ample opportunity to cross-examine Wife effectively. *See id.* at 252.

it falls within a recognized exception. *Id.* Here, the State argues Wife's statement to the 911 dispatcher, that Defendant stepped on Child, made in the immediate aftermath of the incident, was an excited utterance. The excited utterance exception applies when:

> (1) a startling event or condition occurs; (2) the statement is made while the declarant is still under the stress of the excitement caused by the event and has not had the opportunity to fabricate the story; and (3) the statement relates to the startling event. The essential test for admissibility of a spontaneous statement or excited utterance is neither the time nor place of its utterance but whether it was made under such circumstances as to indicate it is trustworthy. When statements are made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been fully brought to bear by reasoned reflection, the utterance may be taken as trustworthy and received as testimony.

*Gott*, 523 S.W.3d at 577 (internal quotations and citations omitted).

Defendant argues that Wife's statement was not an excited utterance, and therefore should not have been admitted by the trial court under the excited utterance exception to the hearsay rule. Defendant states Wife had the opportunity to calm down by the time she spoke to the 911 operator and that Wife was no longer under the "immediate and uncontrolled domination of her senses." This Court disagrees with Defendant's argument in that regard. The record clearly reflects that the trial court's decision allowing Wife's statements to the 911 dispatcher into evidence as an exception to the hearsay rule was not against the logic of the circumstances. Here, Wife immediately called 911 after Defendant was involved in a physical altercation with Wife, stepped on Child, and "stormed" out of their home. When Wife made the statements admitted into evidence through the 911 recording, Wife sounded shaken, upset, and emotional as she described Defendant putting his hands on her throat. Defendant can be heard re-entering the home in the background of the 911 call and yelling: (1) "pack your

8

shit and get out of my house," (2) "I'm seeing a lawyer, we're getting a divorce," and (3) "I'm done with you," his voice becoming louder as he got closer to Wife. Wife began sobbing as she told the 911 dispatcher that Defendant had stepped on Child. Defendant admitted in his testimony that he left the house following the incident, returned, and could be heard on the 911 call telling Wife to leave his house, that he was getting a lawyer and that he wanted a divorce. These statements, coupled with Wife's mental state, behavior, and tone of voice, signal that Wife was under the "'immediate and uncontrolled domination of [her] senses as a result of the shock produced by the event.'" *State v. Kemp*, 212 S.W.3d 135, 147 (Mo. banc 2007) (quoting *State v. Strong*, 142 S.W.3d 702, 718 (Mo. banc 2004)). Wife's mental state and the statements she made to the 911 dispatcher all support a reasonable inference that she was under the immediate and uncontrolled domination of her senses. *See Kleeschulte*, 618 S.W.3d at 250 (where a reasonable inference victim was under the immediate and uncontrolled domination of her senses in similar circumstances). Wife's statements to the 911 dispatcher can be taken as expressing Wife's true beliefs as to what occurred on the night of the incident. *See Kemp*, 212 S.W.3d at 147 (where statements in similar circumstances could be taken as expressing a victim's true belief). Therefore, there is a sufficient indicia of trustworthiness from these circumstances to admit Wife's statements and allow the fact-finder to determine the weight they deserve. *Kleeschulte*, 618 S.W.3d at 250.

Moreover, "a prior inconsistent statement of any witness testifying in the trial of a criminal offense shall be received as substantive evidence, and the party offering the prior inconsistent statement may argue the truth of such statement." Section 491.074; *Kleeschulte*, 618 S.W.3d at 250. Even though a witness disaffirms statements under

9

oath, section 491.074 permits the trial court to receive prior inconsistent statements of a witness. *State v. Garner*, 14 S.W.3d 67, 73 (Mo. App. E.D. 1999). Where a witness is present in court and subject to cross-examination, the "admission of such inconsistent statements does not violate the confrontation clauses of the Missouri or the Federal constitution." *Id.* "The only necessary foundation for the admission of the statement pursuant to this statute is the inquiry of whether the witness made the statement, and whether the statement is true." *Id.* As soon as the inconsistency appears from the testimony, inconsistent statements may be used and are admissible as substantive evidence. *State v. Martinez*, 407 S.W.3d 669, 673 (Mo. App. S.D. 2013). It is undisputed by both parties that Wife testified at trial. Wife admitted in testimony that she told the 911 dispatcher that Defendant stepped on Child, and then subsequently denied that the statement was true at trial, claiming instead Defendant stepped near Child but not on Child. Wife's admission at trial that she told the 911 dispatcher that Defendant stepped on Child and her subsequent denial of that fact was sufficient foundation for the 911 recording to come into evidence as a prior inconsistent statement. *Id.* The trial court did not abuse its discretion in admitting the 911 recording.

Furthermore, a reversal based upon improper admission of evidence in a court-tried case is "nearly impossible" to obtain. *State v. Taylor*, 504 S.W.3d 116, 123 (Mo. App. E.D. 2016). There are "fundamental evidentiary implications" when a defendant chooses to try his case before a judge rather than a jury. *Id.* Even if Wife's statements to the 911 dispatcher were inadmissible hearsay, a presumption exists that the admission of inadmissible evidence does not constitute prejudicial error and the trial judge was not influenced by that evidence unless the record makes it clear that the trial court considered

10

and relied upon the inadmissible evidence. ***State v. Coaston***, 609 S.W.3d 527, 530 (Mo. App. S.D. 2020). Defendant has failed to demonstrate that the challenged evidence diverted the trial court's attention from the issues to be resolved or inflamed the fact-finder. ***Id.***

In fact, other evidence admitted at trial supported the trial court's verdicts in this case. Photographs depicting a triangular imprint on Child's shoulder similar to a boot pattern were before the court and Wife testified that the mark was not present when she dressed Child earlier in the day. In addition, Deputy Hartman testified that Wife reported to her Defendant stepped on Child, and that Deputy Hartman personally observed a "fresh or recent[,]" triangular mark on Child's shoulder right after the incident. Defendant admitted he was wearing cowboy boots, that emotions were elevated when he grabbed Wife by her sweatshirt, and that he did not know where Child was or if he stepped on Child during the altercation. Defendant is unable to meet his burden on appeal to show that the alleged abuse of discretion warrants reversal because there is no reasonable probability that the admission of the 911 recording was outcome determinative. ***State v. Gyunashev***, 592 S.W.3d 836, 840 (Mo. App. E.D. 2020). In light of Child's injuries, we are not persuaded that there is a reasonable probability the trial court would have found Defendant not guilty but for the admission of the 911 recording. ***Id.*** Furthermore, Wife's statement that Defendant stepped on Child was cumulative to her own direct testimony that she told the 911 dispatcher and Deputy Hartman that Defendant stepped on Child. Evidence that is cumulative to other properly admitted evidence is not prejudicial. ***State v. Simms***, 630 S.W.3d 870, 886 (Mo. App. W.D. 2021).

11

We find that the trial court did not abuse its discretion in admitting the 911 recording. Defendant's only point is denied.

We note that the trial court's judgment contains clerical errors so that the judgment does not adequately reflect the trial court's verdicts handed down in this case. Specifically, the judgment reflects Counts 1 and 2 were "Dismissed by Prosec/Nolle Pros" and Counts 3 and 4 were guilty pleas. The record reflects that on January 24, 2020, the trial court made its oral pronouncement of the trial court's verdicts. The trial court's docket entry made on the same date mirrors the oral pronouncement and stated the court found Defendant not guilty on Counts 1 and 2 and guilty on Counts 3 and 4. In a criminal case, clerical errors in a judgment "'may be corrected by an order *nunc pro tunc* if the written judgment does not reflect what actually was done.'" ***State v. Smith***, 579 S.W.3d 284, 290 (Mo. App. S.D. 2019) (quoting ***State v. Moore***, 518 S.W.3d 877, 889 (Mo. App. E.D. 2017) and citing Rule 29.12(c)); *see also* ***State v. Lemasters***, 456 S.W.3d 416, 425-26 (Mo. banc 2015) (holding that a *nunc pro tunc* order was appropriate where the written judgment did not accurately reflect what happened during a trial and subsequent sentencing). Because the trial court's written judgment does not accurately reflect the trial court's verdicts, we must remand this case with instructions to the trial court to enter a judgment *nunc pro tunc*.

## Conclusion

The trial court's judgment is affirmed. We remand solely for the trial court to enter a judgment *nunc pro tunc* correctly reflecting the trial court's verdicts in Counts 1 and 2 as not guilty and Counts 3 and 4 as guilty.

12

JENNIFER R. GROWCOCK, J. – OPINION AUTHOR

MARY W. SHEFFIELD, P.J. – CONCURS

DON E. BURRELL, J. –  CONCURS